William L. BUCKEL et al., Plaintiffs,

v.

Virginia E. PRENTICE et al., Defendants.

Civ. A. No. 74–557.

United States District Court, S. D. Ohio, E. D. March 15, 1976.

**1244**

R. Raymond Twohig, Jr., Columbus, Ohio, for plaintiffs.

Lawrence H. Braun, Worthington, Ohio, Craig Denmead, Richard C. Deeg, Columbus, Ohio, for defendants.

## OPINION AND ORDER

DUNCAN, District Judge.

This is a civil rights action brought for declaratory and injunctive relief against various public officials who administer the Columbus Public Schools, Columbus, Ohio. The cause of action arises under 42 U.S.C. § 1983 and the First and Fourteenth Amendments to the United States Constitution. Jurisdiction lies here pursuant to 28 U.S.C. § 1343(3). This matter is before the Court upon plaintiffs' motion for summary judgment. The Court has before it a final pretrial order containing certain agreed facts, four depositions, an affidavit, and various exhibits.

The following are stipulated facts from the final pretrial order entered in this case:

1. That at all times relevant to plaintiffs' complaint, plaintiffs were residents of Columbus, Ohio, and their children attended and were students at Kingswood Elementary School.

2. That at all times relevant to plaintiffs' complaint, defendants were board members and administrators of the Columbus Public Schools as alleged in plaintiffs' complaint.

3. That in July of 1970, the State of Ohio, Department of Education, published a document entitled "Minimum Standards for Ohio Elementary Schools".

4. That on or about December 17, 1973, material written by plaintiff Buckel and other concerned parents was sent to parents of all of the children of Kingswood Elementary School via the children.

5. That on or about April 3, 1974, additional material was presented to defendant Dorothy Scrivener to be sent home by the school children of Kingswood Elementary School, and that defendant Dorothy Scrivener refused to allow the children to take such material home to their parents.

6. That on or about April 13, 1974, plaintiffs appealed defendant Scrivener's decision to defendant Ellis who upheld defendant Scrivener's decision.

7. That on or about May 14, 1974, plaintiffs appealed defendant Ellis' decision to the Board of Education which upheld defendant Ellis' decision.

The plaintiffs in this case are parents of grade school children attending Kingswood Elementary School, which is in the Columbus school system. Plaintiff Buckel and certain other parents believe that parental and community involvement in the management and administration of the schools in a particular community is a worthy goal. To this end, they abhor large, centralized school districts and attendant bureaucratic controls. In December of 1973, plaintiff Buckel and three other Kingswood parents proposed that certain changes be

made in the purpose and composition of the Kingswood Evaluation Committee. They prepared a two-page document entitled "Proposed Changes to the Kingswood Evaluation Committee to Form: The Kingswood Task Force on Educational Improvements," and prevailed upon defendant Dorothy Scrivener, Principal of Kingswood Elementary School, to send copies of the proposal home to parents with students attending Kingswood. This document is the "December 17, 1973 material" referred to in the fourth numbered stipulation set out hereinabove.

Thereafter, in April of 1974, plaintiff Buckel and other Kingswood parents asked Scrivener to send another circular home to parents via Kingswood students. This circular was the "April 3, 1974 additional material" referred to in the fifth numbered stipulation set out hereinabove. The material, styled "Progress Report to Kingswood Parents," expressly disclaimed any connection between its authors and any formal school function or a P.T.A. sponsored activity. This second circular was critical of the school administration's alleged lack of responsiveness to the changes proposed in the December 17, 1973 material. Defendant Scrivener refused to send this second circular home with Kingswood students. After plaintiffs unsuccessfully attempted to have the Superintendent of the Columbus Public Schools and the Columbus Board of Education alter Scrivener's decision, this lawsuit was filed.

Plaintiffs argue that the defendants have created a public forum by permitting a wide variety of printed information to be sent home to parents via school-aged children. Once such a forum exists, they assert, plaintiffs may not, in conformity with the First and Fourteenth Amendments, be denied access to the forum. See, e. g., *Lehman v. City of Shaker Heights,* 418 U.S. 298, 94 S.Ct. 2714, 41 L.Ed.2d 770 (1974). As relief, plaintiffs seek an injunctive order requiring defendants to establish objective standards to be used by them in the future for purposes of deciding whether particular materials will be sent home to parents via school children.

The Columbus Public Schools have a written policy governing the dissemination of commercial advertising to parents by sending it home with students; this policy is not at issue in this case. There is no written policy governing distribution of non-commercial materials. Defendant Dr. John Ellis, Superintendent of the Columbus Public Schools, testified as follows during his September 25, 1975 deposition, at pages 8–9:

Q. In this case, do you have an opinion or viewpoint with respect to whether or not that material [i.e., the April 3, 1974 circular] promotes nonschool interests?

A. In this instance again, my general opinion would be that this request doesn't fall within that particular policy [i.e., the written policy governing dissemination of commercial advertising], but it would definitely fall within the policy that the principal is responsible for the operation of the school on the very broad conditions that have been explicitly stated by the Columbus Board of Education, and that the principal was totally empowered to make a judgment in this case, a judgment that I did not feel was appropriate to overrule.

Q. Are there any general practices that developed over the years that you have observed since the time you have been with the board concerning what kind of material goes home with students to parents?

A. The general practice is that material that is sent home is done so with the permission or approval of the principal. Generally speaking, such information would have to be of educational value directly related to the students' interests or the safety of the children.

Q. What about material that is merely informative to parents with re-

spect to items which somehow relate to the school?

A. That would be a matter for the principal to determine whether it was in the best interest of the pupils · and the educational system.

Q. Do the principals have any guidelines for exercising that discretion which you understand?

A. There are no written guidelines but the topic is reviewed in the administrative cadet program and the statements that you have just made are generally discussed and understood by most of the principals.

Q. With respect to the cadet program and the way in which those statements are reviewed, are there any written guidelines that are suggested for principals to use in making those decisions?

A. No.

Q. Are there any materials utilized in the cadet program which put in writing the suggested outline?

A. No.

The Columbus schools have in the past sent home with students to parents pamphlets of an informational nature. These include materials about home fire safety, musical instrument rental plans, school lunch menus, summer recreation facilities and programs, and musical concerts and recitals. The schools have also used student distribution to disseminate leaflets promoting tax levies and a state income tax.

There is insufficient evidence of record to support a finding that the Columbus Public Schools have developed a practice of permitting parents to use student distribution to express opinions or disseminate information to other parents. There are, however, two instances of record in which defendant Scrivener permitted such material to be sent home with Kingswood students. The first was a circular from "Interested and concerned Kingswood Parents" urging parents to attend a January 24, 1973 presentation at Kingswood Elementary School.

The speaker was "Mr. Bruce Barlow, of the Columbus Board of Education," and his topic was decentralization of public schools. The second such distribution was the December 17, 1973 publication sent by plaintiff Buckel and others.

When asked during her deposition why she had approved the December 1973 distribution but rejected the April 1974 distribution, defendant Scrivener replied as follows, at pages 37–38:

A. Well, I think perhaps I was in error in approving it in the beginning, and I wouldn't want to make two errors.

Q. Why do you think you were in error in approving it in the beginning?

A. Because it did not work in the best interests of the school. The committee that we had was already working and functioning, and why should we make a change?

Q. In other words, you felt that the proposed changes—the original proposed changes—were without merit?

A. As we moved along and I could look back on it; yes, I think I did not recognize that at the very beginning and I think perhaps that was an error in judgment for our school.

Mr. Justice Blackmun observed in the plurality opinion in *Lehman v. City of Shaker Heights,* 418 U.S. 298, 302–303, 94 S.Ct. 2714, 2717, 41 L.Ed.2d 770, 777 (1974), "Although American constitutional jurisprudence, in the light of the First Amendment, has been jealous to preserve access to public places for purposes of free speech, the nature of the forum and the conflicting interests involved have remained important in determining the degree of protection afforded by the Amendment to the speech in question." The "nature of the forum" which plaintiffs seek to establish in the present case is perhaps unique. Plaintiffs do not seek access here to a forum consisting of a school newspaper, or a soapbox in a pub-

lic place, or the advertising placards of a public transit system. Rather, they have fixed their sights upon the student population of the Columbus Public Schools, and assert that these students, as a matter of federal constitutional law, must be made available to them for use, as Mr. Buckel puts it, as "child messengers."

■ By failing to promulgate objective standards governing the distribution via students of non-commercial materials, defendants invite litigation such as the present action. Permitting individual principals to decide, on a case-by-case basis and without clear guidelines, whether particular groups or individuals may send particular pamphlets home with students, could give rise, on a proper set of facts, to serious constitutional questions. Plainly, officials acting under color of state law may not on the one hand open an avenue of communication for persons entertaining certain views, and on the other hand deny the same forum to persons who wish to advocate differing opinions.

The question presented here, however, is not whether the policy adopted by defendants has the *potential* for creating a forum. The issues are (1) whether the evidence shows that a forum has been in fact created, and (2) if so, whether the evidence shows that plaintiffs have been denied access to the forum without just cause.

■ In my judgment, the distribution via students of information concerning coming theatrical events, home safety measures, and the like, is not indicative of the establishment of a forum for First Amendment purposes. Dissemination of such material is a logical and a proper extension of the educational function of schools in our society, and such dissemination does not of itself give rise to any right of access to student distribution by parents or other concerned citizens.

■ The remaining incidents of student distribution which are part of the record of this case are mentioned hereinabove. These are the pamphlets promoting tax levies, the circular urging parents to attend Mr. Barlow's presentation, and the December 17, 1973 material from Mr. Buckel and others. The Court is of the opinion that the past student distribution of these materials is insufficient to support a finding that defendants have created a public forum for the expression of ideas or the dissemination of information. If plaintiffs were seeking to take issue with the content of the materials heretofore permitted to be distributed, a different case might be presented. Plaintiff's more sweeping contention, that the student distribution which has occurred to date requires defendants to permit everyone access to such channels, subject only to reasonable standards, is rejected.

■ The Court, then, while in agreement with plaintiffs that there is no genuine issue as to any material fact herein, does not agree that plaintiffs are entitled to judgment as a matter of law. On the contrary, the Court concludes that on the facts present the defendants are entitled to judgment. The fact that defendants have not filed a cross-motion for summary judgment does not preclude entry of such a judgment if they are otherwise entitled thereto, see, *e. g., Watkins Motor Lines, Inc. v. Zero Refrigerated Lines,* 381 F.Supp. 363, 367 (N.D.Ill.1974); *Petroleo Brasileiro, S.A., Petrobras v. Ameropan Oil Corporation,* 372 F.Supp. 503, 508 (E.D.N.Y.1974).

It is accordingly ORDERED that judgment be entered for defendants and against plaintiffs on the, cause of action set out in the amended complaint.