**WELLS FARGO & COMPANY,**
Plaintiff-Appellant,

v.

**STAGECOACH PROPERTIES, INC.,**
Defendant-Appellee.

No. 81–4175.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 11, 1982.

Decided Aug. 24, 1982.

Rehearing Denied Oct. 12, 1982.

Richard E. Backus, Flehr, Hohbach, Test, Albritton & Herbert, San Francisco, Cal., for plaintiff-appellant.

Theodore H. Lassagne, Huebner & Worrel, Los Angeles, Cal., for defendant-appellee.

No. 29,617

Stagecoach Properties, Inc. (hereinafter SP), opposed these applications, claiming prior use of the stagecoach symbol, from October 1960, for motel and restaurant services. The mark consisted of the words "Stagecoach Inn, Salado, Texas" and a picture of a Western style stagecoach pulled by a team of four horses. The words "Wells Fargo Lines" appeared in small print on the side of the stagecoach.

The Patent and Trademark Office granted SP a service mark registration for "STAGECOACH INN" in 1968.

Before BROWNING, Chief Judge, WRIGHT and TRASK, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

We decide that the district court's affirmance of the Trademark Trial and Appeal Board's denial of appellant's registration was proper.

FACTS

In 1974, Wells Fargo & Company (hereinafter WF), sought registration of the following two symbols used to promote its employee restaurant services:

No. 31,530

■ WF in response claimed first use of the stagecoach symbol in 1918 to promote its employee lunchrooms.[1]

---

1.  This date was contrary to that claimed in its application. WF's application asserted November 1966 as the date of first use by licensees authorized to use the mark.

    WF was not bound by the application date and was entitled to prove an earlier use by

clear and convincing evidence. *Elder Manufacturing Co. v. International Shoe Co.*, 194 F.2d 114, 118 (CCPA 1952). We now affirm the Board's and the district court's conclusions that it failed to carry this burden.

With an extensive recital of the history underlying both parties' claims to the mark, the Trademark Trial and Appeal Board (hereinafter Board) denied the registration. *See Stagecoach Properties, Inc. v. Wells Fargo & Co.*, 199 U.S.P.Q. 341 (TTAB 1978)

Dissatisfied with this result, WF sued SP in district court. Count I of its complaint sought a declaratory judgment that SP's service mark registration of "STAGE-COACH INN" for restaurant and motel services was invalid, Count II requested review of the Board's rulings on SP's opposition, and Count III sought, in the alternative, declaratory judgment that WF was entitled to concurrent registration of its marks.

The district court reviewed the Board's findings and specifically found that they had not been overcome at trial. Thus, in response to Count II and in its capacity to review the Board's decision, the district court affirmed. It remanded to the Board Counts I and III (invalidity of SP's registration and concurrent registration).

DISCUSSION

Section 2(d) of the Lanham Act, 15 U.S.C. § 1052(d), provides that a trademark will be refused registration if, when connected to the applicant's goods or services, it is likely to cause confusion with goods or services bearing (1) a mark already registered in the Patent and Trademark Office, or (2) a mark that previously has been used somewhere in the United States.[2]

In an opposition proceeding, the opposer therefore contends that the applicant's mark so resembles his own registered mark or his prior common law mark that it will likely cause confusion. If, as an initial matter, the opposer fails to prove likelihood of confusion, and no other bar to registration appears, the Board's inquiry ends and registration may be granted. Once likelihood of confusion is established, the opposer still must prove his superior right to the mark, either by presenting proof of prior registration or of prior use in the United States. *See generally* 1 J. McCarthy, *Trademarks and Unfair Competition* §§ 20:4–20:8.

In the present proceeding, the Board and the district court held on alternative grounds that registration should be denied. These grounds were: (1) WF's marks are confusingly similar to SP's previously used, unregistered marks, and (2) they are confusingly similar to SP's registered "STA-GECOACH INN" service mark. WF on appeal has argued against both holdings. Because we affirm on the first ground, which is sufficient to deny registration, we do not reach arguments relating to the second.

*Standard of Review*

■ Section 21 of the Lanham Act, 15 U.S.C. § 1071, provides for two avenues of appeal from a Board decision. A dissatisfied party may appeal to the United States Court of Customs and Patent Appeals or may bring a civil action in district court. When the latter is pursued, the record of the Board is admitted by motion before the district court and has the same effect as if originally produced there.[3]

WF has not argued the asserted licensee use on appeal, presumably because that use is not prior to SP's.

**2.** 15 U.S.C. § 1052 provides in relevant part:
No trademark by which the goods of the applicant may be distinguished from the goods of other shall be refused registration on the principal register on account of its nature unless it—
. . . .
(d) Consists of or comprises a mark which so resembles a mark registered in the Patent and Trademark Office or a mark or trade name previously used in the United States by another and not abandoned, as to be likely, when applied to the goods of the applicant, to

cause confusion, or to cause mistake, or to deceive . . .

**3.** The relevant portions of § 1071 provide as follows:
(b)(1) Whenever a person authorized by subsection (a) of this section to appeal to the United States Court of Customs and Patent Appeals is dissatisfied with the decision of the Commissioner or Trademark Trial and Appeal Board, said person may, unless appeal has been taken to said Court of Customs and Patent Appeals, have remedy by a civil action . . . . The court may adjudge that an applicant is entitled to a registration upon the application involved, that a registration involved should be canceled, or such other

The relation between the Patent Office and the district court concerning patent decisions was defined in *Morgan v. Daniels*, 153 U.S. 120, 14 S.Ct. 772, 38 L.Ed. 657 (1894). There the Supreme Court said that the Patent Office decision of priority of invention must be accepted as controlling by the district court unless the contrary is "established by testimony which in character and amount carries thorough conviction." *Id.* at 125, 14 S.Ct. at 773.

■ We have ruled that the *Morgan* rule is applicable to the likelihood of confusion issue in trademark cases. *Safeway Stores, Inc. v. Dunnell*, 172 F.2d 649 (9th Cir.), *cert. denied*, 337 U.S. 907, 69 S.Ct. 1049, 93 L.Ed. 1719 (1949). We have also ruled that the civil action permitted by 15 U.S.C. § 1071 is to be a trial de novo, but that the decision of the Board must be accepted as controlling on fact issues unless overcome under the *Morgan* standard. *Redken Laboratories, Inc. v. Clairol, Inc.*, 501 F.2d 1403, 1404 (9th Cir. 1974). The trial is de novo to the extent that the parties are permitted to introduce additional evidence relevant to the issues raised before the Board. *Id.*

■ Appellate review of the district court's factual conclusions has traditionally been under the clearly erroneous standard.[4] Fed.R.Civ.P. 52(a); *Sarah Coventry, Inc. v. T. Sardelli & Sons, Inc.*, 526 F.2d 20 (1st Cir.

1975), *cert. denied*, 426 U.S. 920, 96 S.Ct. 2626, 49 L.Ed.2d 374 (1976); *Aloe Creme Laboratories, Inc. v. Texas Pharmacal Co.*, 335 F.2d 72 (5th Cir. 1964); *Teter, Inc. v. Rheem Manufacturing Co.*, 334 F.2d 784 (7th Cir. 1964); 2 J. McCarthy, *supra* § 21:6 at 13–14 (1973).

Constrained by this analysis, we look to the district court's record (including the Board's record introduced by joint motion, and the new evidence presented at trial) to determine whether its findings are clearly erroneous. Generally, the district court found that the Board's conclusions were not overcome at trial by evidence carrying thorough conviction.

### Likelihood of Confusion

■ The test of likelihood of confusion is the same as that applied in infringement actions. But the Board considers only the use shown in the application, not actual use, because opposition proceedings do not determine the common law rights of the applicant. They determine only whether the applicant has the exclusive right to use of the mark and so qualifies for registration. 2 J. McCarthy, *supra* § 20:4 at 765.

WF presented no persuasive evidence at trial to overcome the Board's finding of likelihood of confusion between its symbols and SP's unregistered stagecoach symbols.[5]

---

matter as the issues in the proceeding require, as the facts in the case may appear

. . . .

. . . .

(3) . . . In suits brought hereunder, the record in the Patent and Trademark Office shall be admitted on motion of any party, upon such terms and conditions as to costs, expenses, and the further cross-examination of the witnesses as the court imposes, without prejudice to the right of any party to take further testimony. The testimony and exhibits of the record in the Patent and Trademark Office, when admitted shall have the same effect as if originally taken and produced in · the suit.

4. This standard of review is consistent with the deference to the administrative decision required by the statute and by case law. We are mindful, however, of the line of cases emanating from *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 314 F.2d 149 (9th Cir. 1963), which describes the question of likelihood of confusion as one of law, and

which in infringement cases permits us unrestrained review of that issue. *See also AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979) (confusion issue may be fully reviewed by appellate court if facts not in dispute, because appellate court in as good a position as trial judge to determine probability of confusion); *accord, Golden Door, Inc. v. Odisho*, 646 F.2d 347 (9th Cir. 1980); *Alpha Industries v. Alpha Steel, Tube & Shapes, Inc.*, 616 F.2d 440 (9th Cir. 1980).

In the procedural setting of an infringement case, the district court's role is different from that in a case arising from the Patent Office. *Fleetwood Co. v. Hazel Bishop, Inc.*, 352 F.2d 841, 844 (7th Cir. 1965).

5. It presented only evidence of surveys conducted to determine the strength of the stagecoach symbol used in connection with WF's banking services and the testimony of its employee that use of the symbol for other services would be associated with the bank. The district court could doubt the relevance

WF has instead focussed on the district court's affirmation of the Board's application of the so called "word picture equivalency rule." We do not reach this issue for the reason stated above.

*Priority of Use*

WF first argues in support of its priority of use. It argues that the Board's and the district court's findings that it failed to establish use of the stagecoach symbol in connection with employee restaurant facilities were based upon the incorrect assumption that in-house use is not sufficient to establish trademark rights.

Such an assumption would be contrary to *American International Reinsurance Co. v. Airco, Inc.*, 570 F.2d 941 (CCPA), *cert. denied*, 439 U.S. 866, 99 S.Ct. 190, 58 L.Ed.2d 175 (1978), which held that use of a mark to identify services exclusively available to employees of the user does not preclude the mark from being a protectible trademark. *Id.* at 944.

WF's argument, however, is based upon a misreading of the Board's and the district court's decisions. The Board rested its decision on this issue on the lack of evidence of actual use of the mark to promote restaurant services, not on the lunchrooms' limited patronage.[6]

At trial, WF presented testimony of present use of a stagecoach symbol on frames used for posting employee cafeteria menus and a bronze sculpture of a stagecoach in the executive dining room. Yet no evidence showed that these symbols were used to promote these facilities prior to SP's use. E.R. 6. The district court could conclude that the Board's finding (that WF failed to show promotion with the symbol) was correct.

WF then attacks SP's priority in its unregistered marks by arguing that SP copied WF's banking marks. To make this argument it asserts: (1) that SP adopted a stagecoach design that included "Wells Fargo Lines" in small lettering, (2) that Dion Van Bibber (SP's predecessor) was generally aware of Wells Fargo history, and (3) that Exhibits J and 356 are similar.

It is not clear what argument WF now makes with these facts. Before the Board, it argued that the use of "Wells Fargo Lines" was evidence of unclean hands. Before us it argues that these facts demonstrate copying by SP and that its use cannot therefore be prior to WF's.

We reject the copying/no priority argument because it assumes that the WF's use of the stagecoach symbol for banking

---

6. The Board made the following finding regarding use to promote employee lunchrooms:

> The testimony about the lunchrooms is part of the attempt by applicant to stitch together a tapestry depicting restaurant activities conducted under the banner of a stagecoach design, but in this instance the banner is not in view. The bank's employees and their guests of course knew the auspices under which the lunchrooms operated, but there is no persuasive evidence of any purposeful promotion of a stagecoach design mark for restaurant services by applicant or any of its predecessor banks either to the general public or to its employees . . . .

199 U.S.P.Q. at 350.

> Nonpromotion with the mark distinguishes this case from Airco, where the in-house retirement plan was actively promoted with the mark ("AIRCO") sought to be registered. 570 F.2d at 942.

of the survey evidence and the credibility of the employee's testimony.

In an infringement action, a famous mark may be entitled to protection against use for products or services that in the public mind may be associated with the plaintiff's product or service. *See James Burrough Ltd. v. Sign of Beefeater, Inc.*, 540 F.2d 266 (7th Cir. 1976) (gin: restaurant services); *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 314 F.2d 149 (9th Cir. 1963) (scotch: beer). However, this is not an action by WF for infringement of its marks used for banking services.

As noted, the scope of inquiry in an opposition proceeding is confined to the mark as represented in the application. To be availing, the survey evidence presented here minimally would have to show that the stagecoach symbols used by WF for banking services were associated by its employees with its restaurant services prior to the first use established by SP. The Board and the district court specifically found that they were not.

services establishes priority for this proceeding. The issue is not whether WF enjoys priority for the mark as used to promote banking services, it is whether it enjoys priority for its use to promote restaurant services.

■ The unclean hands argument is more difficult. If SP has deliberately attempted to exploit the commercial good will of WF's banking marks, it cannot enjoy enforcement of rights by the Board or by the federal courts. *Precision Co. v. Automotive Co.*, 324 U.S. 806, 814–15, 65 S.Ct. 993, 997–98, 89 L.Ed. 1381 (1945).

*Unclean Hands*

■ The Board found that the words "Wells Fargo Lines" in SP's mark adopted in 1960 were derived from the general history of the American West and were not an attempt to appropriate the commercial good will of WF's banking services. In light of this finding, Mr. Van Bibber's purported knowledge of Wells Fargo history is unconvincing evidence that the SP's stagecoach design was a result of copying.

The only evidence suggesting that SP's use of "Wells Fargo Lines" was a deliberate attempt to exploit Wells Fargo good will was James Love's trial testimony. As a market researcher for WF, he asserted that the use of the words "Wells Fargo Lines" on a stagecoach design to promote restaurant services would be associated by the public with WF's banking services. But this testimony was self-serving and is irrelevant to whether SP intentionally adopted the words to create such an association. Even if the words created confusion, the confusion alone does not evidence intentional appropriation.

WF argues that intent is immaterial, citing *Coca-Cola Co. v. Gemini Rising, Inc.*, 346 F.Supp. 1183 (E.D.N.Y.1972). That case held that an *infringer's* intent to associate with plaintiff's product was immaterial where his blatant, bastardized rendition of plaintiff's mark expressed a meaning so contrary to that mark's secondary meaning that it diluted its advertisement value in the marketplace. The defendant in that case produced a poster that recreated the famous "Enjoy Coca-Cola" sign with variation only in the "Cola" (changed to "ine" so that the sign read "Enjoy Cocaine").

■ We are not compelled by the reasoning of that case to conclude that SP's intent is irrelevant to an unclean hands inquiry. Bad intent is the essence of the defense. In *Gemini Rising*, intent was not an issue because the damaging effect of the defendant's use of the mark was obvious. 346 F.Supp. at 1183. Though the case may have relevance if this were an action brought by WF for infringement of its banking service marks, it has none here.

■ Exhibits J and 356, however, present a different problem. Love testified that these were nearly identical and that their similarity could cause confusion:

Ex. J.

Ex. 356

It may not as easily be said that SP's use of Exhibit J derives from history or that it does not imply copying of WF's marks. SP's Exhibit J mark is strikingly similar to WF's Exhibit 356 mark used for banking services.

However, our review of the trial record convinces us that the district court could conclude that the Board's finding of no unclean hands was not overcome by this evidence. Though the symbols are similar, WF presented no evidence of when its symbol was adopted. In the absence of such evidence and to support affirmance, the inference may be drawn that it was adopted after SP's oval symbol, or that both are derived from a similar, common format.

Moreover, both symbols were before the Board and the district court could conclude that it too noted the striking similarity but still held that there had been no attempt to associate with WF.[7]

*Invalidity of SP's Registration*

WF argues that SP's registration of "STAGECOACH INN" is invalid because SP's president falsely swore in application for its registration that he did not know of rights of others to its use. We do not reach this issue because we affirm denial of registration based on SP's unregistered marks.[8]

AFFIRMED.

---

7. We are not convinced by WF's argument that the district court ignored its evidence at trial regarding the similarity of these two exhibits. We have already noted the self-serving nature of James Love's testimony. Furthermore, his testimony on this point was elementary and redundant. As noted by the district court, the similarity of the exhibits is "fairly obvious." R.T. 138.

8. If we did not now avoid the invalidity issue, we would probably hold it barred.
The practice of the Board at the time of the opposition proceeding in this case was to require invalidity of the opposer's registration to be raised in a compulsory counterclaim. *See Scovill Mfg. Co. v. Stocko Metall-warenfabriken Henkels und Sohn KG*, 188 U.S.P.Q. 24 (TTAB 1975); *Delta Tire Corp. v. Sports Car Club, Inc.*, 185 U.S.P.Q. 443 (TTAB 1975); *Kajita v. Walter Kidde & Co.*, 185 U.S.P.Q. 436 (TTAB 1975); *Textron Inc. v. Gillette Co.*, 180 U.S.P.Q. 152 (TTAB 1973);

*Outdoor Sports Industries, Inc. v. Joseph & Feiss Co.*, 177 U.S.P.Q. 535 (TTAB 1972). Though the Board's analysis of its own rules was later questioned in *Thuron Industries, Inc. v. Conard-Pyle Co.*, 579 F.2d 633 (CCPA 1978), these rules have since been amended to state clearly the compulsory counterclaim policy. *See* 46 Fed.Reg. 6,934–40 (1981) (codified at 37 C.F.R. §§ 2.106(b) & 2.114(b) (1981)).
The policy underlying the practice is a good one, to avoid proliferation of proceedings where the continued existence of the opposer's registration is inextricably involved with the applicant's right to obtain a registration. *See* 46 Fed.Reg. at 6,935–36.
WF has presented no evidence tending to excuse its failure to raise invalidity before the Board, *e.g.*, that it did not know of the alleged ground for invalidity during proceedings before the Board.