Mary J. SCHMIDT, in her capacity as sole Trustee of the Harry J. Hoenselaar Revocable Trust, Plaintiff,

v.

Donald J. QUIGG, Acting Assistant Secretary in the United States Department of Commerce and Acting Commissioner of Patents and Trademarks, Defendant.

Civ. A. No. 84–CV–3492–DT.

United States District Court, E.D. Michigan, S.D.

May 20, 1985.

John A. Artz, Ronald W. Wangerow, Harness, Dickey & Pierce, Birmingham, Mich., for plaintiff; J. Rodgers Lunsford, William R. Cohrs, Hurt, Richardson, Garner, Todd & Cadenhead, Atlanta, Ga., of counsel.

Karl Overman, Asst. U.S. Atty., Detroit, Mich., for defendant.

## MEMORANDUM OPINION

FEIKENS, Chief Judge.

This matter arises out of plaintiff's attempt to register the term "Honey Baked Ham" as a trademark pursuant to the Trademark Act of 1946, 15 U.S.C. § 1051 *et seq.* Jurisdiction is based on 15 U.S.C. § 1071(b).

Plaintiff, Mary J. Schmidt, is sole trustee of the Harry J. Hoenselaar Revocable Trust which was created October 4, 1973. The trust was created and has its principal place of business in Michigan operating

under the name and style, Honey Baked Ham Company ("Company"). Since approximately 1949, the Company has continuously used the term "Honey Baked Ham" on spiral sliced glazed hams. In 1949, the Company's product was distributed out of a single store in Detroit, Michigan; since then, the Company has grown to nearly 100 stores in 23 states. From 1960 to 1985, over $10 million was spent on advertising "Honey Baked Ham," and gross revenue for its stores exceeded $300 million during the same period.

On August 29, 1977, plaintiff filed an application to register the term "Honey Baked Ham" under the provisions of the Trademark Act of 1946, 15 U.S.C. §§ 1051 et seq. On December 6, 1977, the United States Patent and Trademark Office rejected plaintiff's application. Plaintiff responded to the Office Action, and the Patent and Trademark Office again rejected the application on September 28, 1979. The Patent and Trademark Office's refusal was continued on June 15, 1981, and on November 3, 1981, plaintiff appealed the refusal to the Trademark Trial and Appeal Board. That Board affirmed the Patent and Trademark Office's refusal to register on May 31, 1984.

 Plaintiff may seek review of a Trademark Trial and Appeal Board final decision in either the United States Court of Appeals for the Federal Circuit or a United States District Court. 15 U.S.C. § 1071(b). An appeal to the Federal Circuit is an appellate review of the Trademark Trial and Appeal Board record. A section 1071(b) review in District Court is different. The District Court proceeding is often called a de novo review because new evidence may be introduced. A more apt description, however, is found in Standard Pressed Steel Co. v. Midwest Chrome Process Co., 418 F.Supp. 485, 489 (N.D.Ill. 1976), in which the court described the standard of review as "unique." See also Gillette Co. v. "42" Products Ltd., 435 F.2d 1114, 1115 (9th Cir.1970). The review is unique because the record below, as well as new matters, may be introduced as evidence. Unlike a de novo proceeding, findings of fact made by the Trademark Trial and Appeal Board are given great weight and are not upset unless new evidence is introduced "which in character and amount carries thorough conviction." American Heritage Life Insurance Co. v. Heritage Life Insurance Co., 494 F.2d 3, 10 (5th Cir.1974); see also Morgan v. Daniels, 153 U.S. 120, 125, 14 S.Ct. 772, 773, 38 L.Ed. 657 (1894). The District Court may also reverse the Trademark Trial and Appeal Board if its decision is not supported by sufficient evidence. See Redken Laboratories, Inc. v. Clairol, Inc., 501 F.2d 1403, 1404 (9th Cir.1974); cf. In re DC Comics, Inc., 689 F.2d 1042, 1054–55 (C.C.P.A.1982) (Judge Nies, concurring) (Trademark Trial and Appeal Board's refusal to register reversed by Court of Claims and Patent Appeals because the Patent and Trademark Office did not meet its burden of proof.)

Not all terms may be registered as trademarks under the Trademark Act of 1946. A common reason for rejecting an application for trademark registration is that the term is too descriptive of the applicant's type of goods. Exclusive use of such a term by the applicant would deprive others of using the term to describe their goods. The United States Court of Appeals for the Sixth Circuit has identified four categories of descriptiveness into which a term may fit:

A term for which trademark protection is claimed will fit somewhere into the spectrum which ranges through (1) generic or common descriptive and (2) merely descriptive to (3) suggestive and (4) arbitrary or fanciful.

A generic or common descriptive term is one which is commonly used as the name or description of a kind of good. It cannot become a trademark under any circumstances.

A merely descriptive term specifically describes a characteristic or ingredient of an article. It can, by acquiring a secondary meaning, i.e., becoming distinctive of the applicant's good ..., become a valid trademark.

A suggestive term suggests rather than describes an ingredient or characteristic of the goods and requires an observer to use imagination and perception to determine the nature of the goods. Such a term can be protected without proof of a secondary meaning.

An arbitrary or fanciful term enjoys the same full protection as a suggestive term but is far enough removed from the merely descriptive not to be vulnerable to possible attack as being merely descriptive rather than suggestive.

*Induct-o-matic Corp. v. Inductotherm Corp.*, 747 F.2d 358, 362–63 (6th Cir.1984) (quoting *Miller Brewing Co. v. G. Heileman Brewing Co.*, 561 F.2d 75, 79 (7th Cir.1977), *cert. denied*, 434 U.S. 1025, 98 S.Ct. 751, 54 L.Ed.2d 772 (1978) (citations omitted) ).

The Trademark Trial and Appeal Board concluded that the term "Honey Baked Ham" is "an apt or common descriptive name for [plaintiff's] baked hams to which a honey glaze has been applied." *In re Schmidt*, 222 U.S.P.Q. 643, 644 (T.T.A.B. 1984). If "Honey Baked Ham" is a common descriptive name, it is not registerable as a trademark. Plaintiff argues that her term is not a common descriptive term, but instead is a merely descriptive term and, thus, is registerable if it has acquired a secondary meaning. It is clear that "Honey Baked Ham" is not suggestive, arbitrary or fanciful, and so the threshold question becomes whether it is a common descriptive term or a merely descriptive term—in other words, does the term fit into *Induct-o-matic's* category one or category two? If it is determined that "Honey Baked Ham" is a merely descriptive term, I must address the question whether the term has acquired a secondary meaning.

The burden of proving that plaintiff's claimed trademark is a common descriptive term is on defendant. *See In re DC Comics, Inc.*, 689 F.2d at 1054–55 (Judge Nies, concurring); *In re American Standard Inc.*, 223 U.S.P.Q. 353, 355 (T.T. A.B.1984). After careful consideration of the testimony, documents, and the record introduced by the parties, I conclude that defendant clearly has failed to prove that the term "Honey Baked Ham" is "commonly used as the name or description of a kind of good." *Induct-o-matic Corp.*, 747 F.2d at 362.

Defendant introduced virtually no evidence suggesting that "Honey Baked Ham" is a common descriptive term. In fact, defendant's failure to proffer any meaningful evidence suggesting the common use of the term strongly suggests that "Honey Baked Ham" is not a common or generic description. For example, defendant referred to a restaurant menu mentioned in the *Christian Science Monitor* which listed "Honey Baked Ham" as a selection. Defendant's Exhibit 1, p. 340. This evidence is not persuasive because it is unclear whether the restaurant in question was using the term generically. Defendant offered no proof that the menu listing did not refer to plaintiff's product. Moreover, one isolated instance of the term's use by another party does not demonstrate that it is a common descriptive term.

Defendant also argues that the use of the simile "like honey on a baked ham, ice glazes porch railings ..." in a *Washington Post* article about job seekers is symptomatic of how aptly descriptive "Honey Baked Ham" is. Defendant's Exhibit 1, p. 339. I find this evidence wholly unsupportive of defendant's position. The simile does not demonstrate that "Honey Baked Ham" is a generic term; it only demonstrates that honey is commonly used in preparing hams. It is undisputed that plaintiff is not the sole supplier of hams glazed with honey, nor does plaintiff deny that the term describes a characteristic or ingredient of her product. The core inquiry is whether "Honey Baked Ham" is a generic or common descriptive name for hams prepared with honey, and defendant's simile evidence does not address the inquiry.

Thus, I find that the term "Honey Baked Ham" is not a common descriptive term, and I hold that the Trademark Trial and

Appeal Board was in clear error in its finding to the contrary. The burden of proving that "Honey Baked Ham" is a generic or common descriptive term is on defendant, and the unpersuasive character and small amount of the evidence in support of defendant's position is insufficient to shift the burden of persuasion.

■ Even if defendant's evidence were sufficient to shift the burden of persuasion, plaintiff's evidence introduced at trial, in character and amount, carried thorough conviction in demonstrating that "Honey Baked Ham" is not a generic or common descriptive term. Plaintiff introduced live testimony and deposition testimony by witnesses from the Detroit, Michigan, area and the Atlanta, Georgia, area. The witnesses testified that "Honey Baked Ham" is not a generic term and that it refers only to plaintiff's product. One witness, Ms. Patricia Chemliewski, testified that "Honey Baked Ham" was not and is not available from any source other than the Honey Baked Ham Company. In addition, Ms. Chemliewski testified that she repeatedly drove to the Honey Baked Ham Company's Detroit store to pick up hams, notwithstanding the inconvenience of leaving her suburban home in Dearborn Heights.

Plaintiff also introduced the findings of a survey conducted by its advertising firm and an independent research firm. Plaintiff's Exhibits 20A–E. The purpose of the survey was to determine the reason or reasons for a greater than expected decline of "Honey Baked Ham" sales in Cleveland, Ohio, during the summer of 1984. A stratified, random sample of 300 people living within plaintiff's marketing areas was asked approximately 80 questions about their food purchase and consumption attitudes and experiences. The survey was conducted by telephone, and included the following question: "Have you ever heard of 'Honey Baked Brand Ham' before this survey?". Almost all (96.3%) answered yes

to this question. More important, all (100%) those who were aware of "Honey Baked Ham" were also aware that these hams could only be purchased at a Honey Baked Ham Company store. This statistic strongly supports the conclusion that "Honey Baked Ham" is not a generic term. Not one person questioned responded that "Honey Baked Ham" is available at any location other than a Honey Baked Ham Company store or that it could be prepared at home, which could be reasonably expected if the term were generic.

The survey also indicated that "Honey Baked Ham" had the highest "top-of-mind" and "share-of-mind" awareness levels of any brand of ham.[1] Top-of-mind awareness was 30.7% for "Honey Baked Ham," and share-of-mind awareness was 49.3%. In comparison, the top-of-mind and share-of-mind levels for Armour brand ham were 10.3% and 24.0%, respectively.

I conclude that "Honey Baked Ham" is not a common descriptive term and turn to plaintiff's contention that the term is merely descriptive and has acquired a secondary meaning. As there is now no dispute that the term is merely descriptive, the critical inquiry is whether it has acquired a secondary meaning. A secondary meaning is usually defined as a meaning "distinctive of applicant's good." *Induct-o-matic Corp.,* 747 F.2d at 362; *see also G. & C. Merriam Co. v. Saalfield,* 198 Fed. 369, 373 (6th Cir.1912), *cert. denied,* 243 U.S. 651, 37 S.Ct. 478, 61 L.Ed. 947 (1917) (states that secondary meaning was acquired when "in [the relevant] trade and to [the relevant] branch of the purchasing public, the word or phrase had come to mean that the article was [the applicant's] product . . ."). The burden of proving that the term has acquired this secondary meaning is on plaintiff.

A prima facie showing of secondary meaning can be made through substantially exclusive and continuous use of the term

---

1. For purposes of the survey, a brand name had top-of-mind awareness when it was the first brand name response to the question, "When you think of ham, what brand names come to

mind?". Share-of-mind awareness for a brand was demonstrated when the brand was a response, although not necessarily the first response, to the same question.

in commerce for the five years directly preceding application for registration. 15 U.S.C. § 1052(f). Plaintiff and her predecessors in interest have been using the term "Honey Baked Ham" continuously since 1949, and in the five years preceding application they have sold over $27 million of their product through stores in Michigan, Ohio, Georgia, and California. The evidence also indicates that plaintiff has had substantially exclusive use of the term. Specifically, plaintiff has introduced a number of unsolicited letters from persons in many areas of the country asking for permission to sell hams under the "Honey Baked Ham" name as franchisees or licensees. Plaintiff's Exhibits 26A–AAA. It is unlikely that these people would desire to enter a business arrangement to use the "Honey Baked Ham" name if the name were not being used on a substantially exclusive basis by plaintiff.

Plaintiff has gone beyond a prima facie showing of secondary meaning. In addition to substantially exclusive and continuous use, witness testimony demonstrates that "Honey Baked Ham" is equated to the sole source of plaintiff's hams. The survey results also demonstrate this fact. Over 96% of the survey sample knew of "Honey Baked Ham" and its sole source, the Honey Baked Ham Company. Plaintiff's survey expert testified that in his experience only Sears department store has matched this aided brand awareness level of "Honey Baked Ham."

Accordingly, I conclude that the term "Honey Baked Ham" has acquired a secondary meaning within the provisions of 15 U.S.C. § 1052(f).

As a merely descriptive term which has acquired a secondary meaning distinctive of plaintiff's goods, "Honey Baked Ham" is entitled to registration upon the Principal Register pursuant to the provisions of 15 U.S.C. § 1052(f). The Trademark Trial and Appeal Board's decision in this case is, therefore, REVERSED.

An appropriate order will be submitted.