**SPRINKLETS WATER CENTER, INC., Plaintiff,**

v.

**McKESSON CORPORATION, Defendant.**

**No. 91–CV–75936–DT.**

United States District Court, E.D. Michigan, S.D.

Nov. 17, 1992.

---

**3.** This MOOTS defendant Walker's motion for summary judgment.

Robert C.J. Tuttle, Brooks & Kushman, Southfield, Mich., for plaintiff.

James E. Stewart, Butzel Long, Detroit, Mich., David J. Brezner, Flehr, Hohbach, Test, Albritton & Herbert, San Francisco, Cal., for defendant.

## MEMORANDUM OPINION AND ORDER

ZATKOFF, District Judge.

This matter is before the Court on defendant's motion for summary judgment on Count I of plaintiff's complaint. Defendant has also moved for summary judgment on plaintiff's second, fifth, sixth and seventh affirmative defenses raised in answer to defendant's counterclaims. Plaintiff subsequently filed a brief in response to which defendant has replied. Accordingly, it is hereby ORDERED that this matter will be determined on the briefs. E.D.Mich. LR 7.1(e)(2). For the reasons that follow, defendant's motion is GRANTED in its entirety.

1. Defendant had used its mark in connection with bottled water products since 1925, and it had been registered as a federal trademark for almost 40 years.

2. Under the Trademark Act, a mark will be denied registration if it "so resembles a mark registered in the Patent and Trademark Office ... as to be likely, when used on or in connection with the goods of the applicant, to cause confusion, or to cause mistake, or to deceive...." 15 U.S.C. § 1052(d).

## FACTS

On July 12, 1990, plaintiff applied to the U.S. Patent and Trademark Office ("PTO") to register the mark "SPRINKLETS" for drinking water. The application underwent the requisite statutory examination pursuant to 15 U.S.C. § 1062(a). It was initially determined that plaintiff's mark was entitled to registration. The mark was then published in the Official Gazette for opposition on June 26, 1990.

Three months later, during the pendency of plaintiff's trademark application, defendant formally opposed the registration of "SPRINKLETS" to the Trademark Trial and Appeal Board ("TTAB"). Defendant owns federal trademark registration number 625,100 for "SPARKLETTS," which is also used for drinking water.[1] Defendant urged that plaintiff's use of its proposed mark on drinking water could cause a likelihood of confusion between their respective products.[2]

In July of 1991, plaintiff filed a motion for summary judgment with the TTAB to dismiss defendant's opposition. Plaintiff argued that there was no genuine issue of material fact with respect to likelihood of confusion. The TTAB agreed that there were no genuine factual dispute, but held that it was defendant rather than plaintiff who was entitled to summary judgment. Thus, noting that plaintiff's mark too closely resembles defendant's mark for substantially identical goods, the TTAB *sua sponte* granted summary judgment in defendant's favor.[3]

In Count I of its complaint, plaintiff seeks review of the TTAB's decision in this Court pursuant to 15 U.S.C. § 1071(b). Defendant, in turn, has answered the complaint and asserted various counterclaims.[4]

3. Summary judgment may be rendered in favor of an opposing party even if no formal cross-motion is made. 10A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2720 at 29–30 (2nd Ed.1983); *Buckel v. Prentice,* 410 F.Supp. 1243, 1247 (S.D.Ohio 1976). Plaintiff's suggestion that the TTAB erred in granting defendant summary judgment is, therefore, without merit.

4. Defendant asserted trademark infringement (Count I), unfair competition (Count II), and trademark dilution (Count III). By Memorandum Opinion and Order of November 2, 1992,

In reply to the counterclaims, plaintiff filed nine affirmative defenses. Defendant now moves for summary judgment on Count I of plaintiff's complaint, and plaintiff's second, fifth, sixth and seventh affirmative defenses, pursuant to Fed.R.Civ.P. 56.

## STANDARD OF REVIEW

 Defendant brings this motion pursuant to Fed.R.Civ.P. 56(c). Under this Rule, summary judgment is appropriate where there is no genuine issue of material fact which remains to be decided, and the moving party is entitled to judgment as a matter of law. A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted). In applying this standard, the Court must view all materials offered in support of a motion for summary judgment, as well as all pleadings, depositions, answers to interrogatories, and admissions properly on file in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Where the nonmoving party has failed, however, to present evidence on an essential element of their case, they have failed to meet their burden and all other factual disputes are irrelevant and thus summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## OPINION

### I. *Count I of Plaintiff's Complaint*

 As noted above, plaintiff seeks review of the TTAB's decision in Count I of its complaint. In such a proceeding, findings of fact by the TTAB are given great weight and are not disturbed unless new evidence is introduced "which in character and amount carries thorough conviction."

this Court granted plaintiff's motion for sum-

*Schmidt v. Quigg*, 609 F.Supp. 227, 228 (E.D.Mich.1985) (Feikens, J.) (quoting *Am. Heritage Life Ins. Co. v. Heritage Life Ins. Co.*, 494 F.2d 3, 10 (5th Cir.1974)).

In this case, the TTAB found the following:

> That [defendant] sells its SPARKLETTS bottled drinking water in six western and southwestern states ..., and has built up substantial goodwill in its mark over 65 years use; ... that [defendant], one of the leading distributors of water products in its geographic region, has spent over $4.5 million annually in recent years marketing its SPARKLETTS products; that, although [defendant] does not currently advertise or sell its products in the midwest, where [plaintiff] sells its goods, the respective products are sold in the same channels of trade; that the bottled drinking water products are relatively inexpensive and are frequently replaced; and that no other drinking water products use a mark similar to SPARKLETTS, in whole or in part.... [Defendant's] declaration attests to these facts....

> [I]t is undisputed that, for our purposes, the goods of the parties must be considered substantially identical products travelling in essentially the same channels of trade to the same ultimate purchasers.... It is also undisputed ... that the parties distribute their products in different geographic areas, accounting for the lack of instances of actual confusion, and that there are no other known marks or trade names similar to [defendant's] on the marketplace....

> [W]e believe that [plaintiff's] mark too closely resembles [defendant's] mark for substantially identical goods. Both marks consist of two syllables and begin with the letters "SP–" and end in the letters "–KLETTS" or "KLETS." They have obvious similarities in sound and appearance. Also, the marks are used in connection with a variety of water products, including relatively inexpensive bottled water sold off-the-shelf in grocery

mary judgment on the dilution claim.

stores. These goods are purchased, we believe, without great care. We conclude that [plaintiff's] mark used for these goods so resembles [defendant's] previously used and registered mark as to be likely to cause confusion.[5]

*McKesson Corp. v. Sprinklets Water Center, Inc.*, Opp. No. 83,502 at 3–4 (Trademark Tr. and App.Bd.). Defendant claims that plaintiff has not come forward with any new evidence to show that the TTAB's factual determinations should be upset. Accordingly, defendant concludes that plaintiff has failed to present evidence on an essential element of its case, thus requiring that summary judgment be granted in its favor. *See Matsushita*, 475 U.S. at 585–87, 106 S.Ct. at 1355–56.

In response, plaintiff challenges the veracity of defendant's declaration upon which the TTAB partially relied in reaching its decision, as well as what it contends is the inherent weakness of the SPARKLETTS mark. Accordingly, plaintiff urges that summary judgment be denied.

The declaration presents numerous representations which, according to plaintiff, "have subsequently been demonstrated in discovery in this civil action to be false,

half-true or unprovable." *Plaintiff's Response Brief*, at 3. These include defendant's alleged misrepresentation of the geographic use of its products,[6] its marketshare in those regions,[7] and its claim that no other drinking water products employ a mark similar to SPARKLETTS.[8] With the possible exception of the last, plaintiff's challenges to defendant's declaration are irrelevant.[9]

Among the thirteen factors considered by the Federal Circuit in assessing likelihood of confusion is the number and nature of similar marks on similar goods. *In re E.I. Dupont DeNemours & Co.*, 476 F.2d 1357, 1361 (C.C.P.A.1973). Assuming, as this Court must, that there are other suppliers which use marks such as SPARKLING, SPARKLE and SPRING in connection with the sale of bottled water, this simply is not enough, by itself, to warrant reversal of the TTAB's decision. The absence or presence of any one factor is not dispositive on the issue of likelihood of confusion,[10] and those noted by the TTAB in support of its holding, such as similarity of the marks, similarity of the goods, and the likely degree of purchaser care, are of sufficient weight to uphold its conclusion.[11]

Plaintiff also charges that the SPARK-

---

**5.** The factors considered in determining likelihood of confusion, such as relatedness of the parties' goods, similarity of marks and likely degree of purchaser care, are questions of fact. *Frisch's Restaurants, Inc. v. Elby's Big Boy*, 670 F.2d 642, 651 (6th Cir.1982), *cert. denied*, 459 U.S. 916, 103 S.Ct. 231, 74 L.Ed.2d 182 (1982); *In re E.I. Dupont DeNemours & Co.*, 476 F.2d 1357, 1361 (C.C.P.A.1973).

**6.** In its declaration, defendant asserted that it advertises and distributes its products under the SPARKLETTS mark in six states, California, Nevada, Arizona, New Mexico, Utah and Texas. Plaintiff claims that SPARKLETTS was actually sold in only four states.

**7.** Plaintiff claims that defendant implied in its declaration that it holds 32% of the California market. This is patently untrue. Rather, defendant stated that "in the geographical area where SPARKLETTS drinking water products are sold, SPARKLETTS holds 32% of the California market." *Defendant's Declaration*, at 3.

**8.** Plaintiff claims that marks such as SPARKLING, SPARKLE and SPRING are commonly

used in the bottled water marketplace. Plaintiff argues that these marks are more phonetically and linguistically similar to defendant's mark than its own, SPRINKLETS.

**9.** While geographic use is not explicitly contemplated in a "likelihood of confusion" analysis, evidence of actual confusion is. Geographic use may well have some bearing on this point. However, defendant conceded to the TTAB, as it does to this Court, that there were no instances of actual confusion between the competing goods inasmuch as they were marketed in different regions of the country. Thus, whether defendant actually sold its products only in four western states rather than six would not have affected the TTAB's ultimate determination.

**10.** *See e.g. Armco v. Armco Burglar Alarm Co.*, 693 F.2d 1155, 1159 (5th Cir.1983) (a finding of "likelihood of confusion" need not be supported by even a majority of factors).

**11.** Plaintiff has not offered any new evidence to controvert these findings. Thus, in light of *Schmidt*, this Court must take these factors as established.

LETTS mark is inherently weak.[12] Both the Sixth and the Federal Circuit analyze a mark's strength in the "likelihood of confusion" determination. *See Frisch's Restaurants, Inc. v. Elby's Big Boy of Stuebenville, Inc.*, 670 F.2d 642, 648 (6th Cir.1982), *cert. denied*, 459 U.S. 916, 103 S.Ct. 231, 74 L.Ed.2d 182 (1982), *and In re E.I. Dupont DeNemours & Co.*, 476 F.2d 1357, 1361 (C.C.P.A.1973).[13] The strength of a mark "is a determination of [its] distinctiveness and degree of recognition in the marketplace." *Homeowners Group, Inc. v. Home Mktg. Specialists, Inc.*, 931 F.2d 1100, 1107 (6th Cir.1991). "A mark is strong if ... the public readily accepts it as the hallmark of a particular source; it can become so because it is unique, because it has been the subject of wide and intensive advertisement, or because of a combination of both." *Frisch's Restaurant, Inc. v. Shoney's Inc.*, 759 F.2d 1261, 1264 (6th Cir.1985). The stronger the mark, the greater the likelihood of confusion. *Id.*

 It is universally recognized that, whether or not a mark is registered, its strength must be determined by reference to category; that is, is the mark generic, descriptive, suggestive or fanciful? *Induct–O–Matic Corp. v. Inductotherm Corp.*, 747 F.2d 358, 361 (6th Cir.1984). A generic mark is one which is commonly used as the name or description of a kind of goods or services. Such a mark is afforded no protection and is considered very weak. A descriptive mark, on the other hand, specifically describes a characteristic or ingredient of an article or service and, though not ordinarily protected, may be-

come protectable if it acquires secondary meaning.[14] A suggestive mark suggests rather than describes a characteristic of the goods or services, and requires an effort of the imagination by the consumer in order to be understood as descriptive. A suggestive mark requires no proof of secondary meaning to receive protection. Finally, an arbitrary or fanciful mark enjoys the same full protection as a suggestive mark, but is far enough removed from the descriptive not to be vulnerable to possible attack. *Induct–O–Matic*, 747 F.2d at 362–63. It is indisputable that SPARKLETTS is neither generic nor fanciful. This Court's analysis must thus focus on whether SPARKLETTS is descriptive or suggestive, or, if descriptive, whether it has acquired secondary meaning.

 Assuming that SPARKLETTS is merely descriptive, it is nonetheless clear that the mark has secondary meaning. Secondary meaning can be ascertained through survey evidence, the length and manner of the use of a mark, the nature and extent of advertising and promotion of the mark, and the volume of sales. Here, it is undisputed that the SPARKLETTS mark has been in continuous use by defendant for over 65 years, and, in some form, has been registered as a federal trademark since 1956. Furthermore, over the past twelve years, defendant has spent over $4.5 million dollars per year in advertising and promoting its SPARKLETTS brand products in those markets it serves. *Defendant's Declaration*, at 3. As a result, in a brand awareness study conducted in Los Angeles, California in 1991, 99% of the

**12.** Implicit in the TTAB's determination is that SPARKLETTS is a strong mark, worthy of protection. As with the other factors considered in analyzing likelihood of confusion, it too represents a factual finding by the TTAB which is accorded great weight and will not be upset absent the introduction of new evidence by plaintiff. *Schmidt*, 609 F.Supp. at 228. Inasmuch as plaintiff has failed to introduce anything on this point, this Court need not even reexamine this conclusion. In the interests of justice, however, this Court will go forward.

**13.** In *Dupont*, this inquiry is phrased as the extent to which a party has the right to exclude others from use of its mark on its goods.

**14.** To establish secondary meaning, it must be shown that the primary significance of a mark in the mind of the consuming public is not the product but the producer. *Security Center, Ltd. v. First Nat'l Security Centers*, 750 F.2d 1295, 1301 (5th Cir.1985). There are generally five types of evidence considered in ascertaining whether secondary meaning has attached to a mark: (1) survey evidence; (2) the length and manner of use of the mark; (3) the nature and extent of advertising and promotion of the mark; (4) the volume of sales; and (5) instances of actual confusion. Survey evidence is considered the most direct and persuasive. *Id.*

respondents were able to associate the name SPARKLETTS with bottled water products.[15] *Affidavit of Rene Watanabe,* at 2.[16] In light of the above, this Court holds that, as a matter of law, SPARKLETTS has indeed acquired secondary meaning, and, therefore, is protectable.

To reiterate, plaintiff has failed to introduce any new evidence that would oblige this Court to review the TTAB's findings. Thus, defendant's motion for summary judgment on Count I of plaintiff's complaint is hereby GRANTED.[17]

## II. *Plaintiff's Affirmative Defenses Numbers Five, Six and Seven*

▇▇ Plaintiff's fifth, sixth and seventh affirmative defenses all concern the validity of defendant's registered mark.[18] Defendant argues that plaintiff's failure to assert these defenses before the TTAB precludes it from raising them in this proceeding. Plaintiff, on the other hand, offers no explanation for neglecting to raise the defenses to the TTAB. Rather, and without citation to any case law, plaintiff argues that it would be "plainly wrong based on the Lanham Act and interpretive case authority" to not allow it to assert them. *Plaintiff's Response Brief,* at 19.

In an opposition proceeding, a defense attacking the validity of a registration "shall be a compulsory counterclaim if grounds for such counterclaim exist at the time when the answer is filed." 37 C.F.R. § 2.107 (1991).[19] In *Wells Fargo & Co. v. Stagecoach Properties, Inc.,* 685 F.2d 302 (9th Cir.1982), the Ninth Circuit stated that failing to raise an invalidity defense before the TTAB would likely bar any subsequent attempt to assert it. *Id.* at 309 n. 8. Noting the compulsory counterclaim provision, the court reasoned that it was indicative of a policy to avoid the proliferation of litiga-

---

**15.** The respondents were first asked, "[w]hen you think of brands of noncarbonated drinking water, what is the first brand that comes to mind?" Approximately 35% of the respondents identified SPARKLETTS. Those that mentioned other brands were then asked, "[w]hat other brands of noncarbonated drinking water can you think of?" Including those who named SPARKLETTS in response to the initial question, 76% of the respondents identified defendant's mark. Finally, for those who still had not identified SPARKLETTS, the questioner read a list of seven noncarbonated drinking waters, which included SPARKLETTS, and asked them to name those they had heard of. As noted in the text, 99% of the respondents were now able to identify defendant's mark. *Affidavit of Rene Watanabe,* at 2.

**16.** Inasmuch as Ms. Watanabe supervised all phases of the 1991 brand awareness survey, and her obvious qualifications as a survey expert, this Court would permit her to offer evidence on these matters at trial. Accordingly, her affidavit was properly submitted pursuant to Fed. R.Civ.P. 56(e), and, at least with respect to the 1991 study, was considered by this Court in ruling on defendant's motion. Plaintiff's objections to this portion of the Watanabe affidavit are overruled.

**17.** Plaintiff's counsel, Robert Tuttle, has also filed with this Court an affidavit pursuant to Fed.R.Civ.P. 56(f). He therein claims that summary judgment should not be granted due to the need to depose one of defendant's experts, and, following, to consult with its own expert to prepare evidence opposing defendant's motion. Moreover, Mr. Tuttle asserts that the transcript of Ms. Watanabe's deposition, taken October 2, 1992, was unavailable on the date he was required to respond to defendant's motion, October 5, 1992. He finally maintains that plaintiff will appeal several discovery orders issued by the Magistrate Judge on September 21, 1992, which, according to Tuttle, denied discovery on numerous matters relevant to the summary judgment motion. It appears to this Court that Mr. Tuttle is attempting to use Rule 56(f) as a basis for conducting discovery that should have conducted during the Court-prescribed period. Nothing in the Federal Rules entitles a party to lie in wait for the opposing party to disgorge the opinions of its experts prior to consulting one of its own. Also, if a transcript of the Watanabe deposition, at which plaintiff had an opportunity to cross-examine, was vital to formulating a response to defendant's motion, it could have ordered the transcript to be delivered on an expedited, one day basis. Lastly, this Court has already ruled upon plaintiff's objections to the Magistrate Judge's discovery orders. By Memorandum Opinion and Order of October 30, 1992, all of the rulings were upheld.

**18.** The fifth defense claims that defendant obtained registration of its mark by a false and fraudulent declaration or representation, and/or inequitable conduct. The sixth states that defendant's mark is invalid for failure to meet the requirements for registration, and the seventh asserts that defendant has abandoned any claim of right to the mark.

**19.** Plaintiff has not claimed that the defenses now asserted previously unavailable.

tion when the continued existence of a mark is inextricably involved with another's right to obtain registration. *Id.* This policy, indeed, the compulsory counterclaim rule itself, would be contravened if a party was simply allowed to ignore it, preferring to take its chances with the district court. Thus, this Court holds that plaintiff's failure to raise its invalidity defenses before the TTAB bars it from now attempting to do the same. *Accord Wilson Jones Co. v. Gilbert & Bennett Mfg. Co.*, 332 F.2d 216, 218 (2d Cir.1964) ("[A] party cannot raise an issue in the District Court that [it] has not raised in the Patent Office ..."). Defendant's motion for summary judgment regarding plaintiff's affirmative defenses five, six and seven is GRANTED.

### III. *Plaintiff's Second Affirmative Defense*

Plaintiff has also raised laches as an affirmative defense to defendant's counterclaims. Laches is a negligent and unintentional failure to protect one's rights. *Elvis Presley Enter., Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 894 (6th Cir. 1991). A party asserting laches must show: (1) lack of diligence by the party against whom the defense is asserted; and (2) prejudice to the party asserting it. *Induct–O–Matic Corp.*, 747 F.2d at 367 (citation omitted). In this Circuit, there is a strong presumption that a plaintiff's delay in asserting its rights is reasonable as long as an analogous state statute of limitations has not elapsed. *Elvisly Yours*, 936 F.2d at 894. The statute of limitations applied by the Sixth Circuit in evaluating whether a party has been diligent in protecting its trademark is that for injury to personal property. *Id.* Under Michigan law, that period is three years. *See* M.S.A. § 27A.5805(8) [M.C.L.A. § 600.5805(8)].

Defendant maintains that it first became aware of plaintiff's SPRINKLETS mark in the fall of 1989. Conversely, plaintiff claims that defendant was aware of the mark's use in 1987.[20] In any event, on March 27, 1990, defendant sent plaintiff a cease and desist letter demanding that plaintiff discontinue its use of SPRINKLETS in connection with the distribution of bottled water.

Plaintiff, in response to defendant's motion, has not produced any credible evidence to support its assertion that defendant was aware of the SPRINKLETS mark in 1987. Thus, it has failed to present evidence on an essential element of its laches defense; defendant's lack of diligence. Accordingly, defendant's motion for summary judgment on plaintiff's laches defense is GRANTED.

### CONCLUSION

For the reasons set forth above, defendant's motion for summary judgment on Count I of plaintiff's complaint, on plaintiff's fifth, sixth and seventh affirmative defenses, as well as on plaintiff's laches defense, is GRANTED.

IT IS SO ORDERED.

---

**20.** In support, plaintiff cited this Court to its answers to defendant's interrogatories, number 12. This citation is misleading inasmuch as it sets forth when plaintiff became aware of defendant's mark, not when defendant became aware of plaintiff's mark. A ruling is reserved as to the imposition of sanctions pursuant to Fed. R.Civ.P. 11, and Mr. Tuttle is hereby ORDERED to file a brief explaining this discrepancy within 5 days of the issuance of this Opinion. Of course, his client should not be forced to bear the costs for its preparation.