Mary J. SCHMIDT, in her capacity as sole Trustee of the Harry J. Hoenselaar Revocable Trust, and Original Honey Baked Ham Company of Georgia, Inc., the Georgia Licensee of the Harry J. Hoenselaar Revocable Trust, Plaintiffs,

v.

HONEYSWEET HAMS, INC., a Georgia Corporation, Defendant.

Civ. A. No. 86–2080A.

United States District Court,
N.D. Georgia,
Atlanta Division.

Oct. 6, 1986.

J. Rodgers Lunsford, III, Atlanta, Ga., for plaintiffs.

Stanley F. Birch, Atlanta, Ga., for defendant.

## ORDER

O'KELLEY, District Judge.

Presently before the court is the plaintiffs' application for a temporary restraining order and motion for a preliminary injunction. On September 29, 1986, the day the plaintiffs filed their application and motion, the court held a hearing at which all parties were represented by counsel. The court at that time deferred ruling and permitted all parties to submit additional evidence and/or case law by October 2, 1986. On October 3, 1986, the court held a telephone conference with counsel for all parties. This order incorporates the court's finding made during the October 3, 1986 telephone conference and grants plaintiffs' motion for a preliminary injunction.

## FACTS

For the purpose of ruling on plaintiffs' motion for a preliminary injunction, the court makes the following findings of fact:

(1) Plaintiff Mary J. Schmidt, in her capacity as sole trustee of the Harry J. Hoenselaar Revocable Trust ("Trust"), and the predecessors in interest to the Trust have continuously and exclusively used the trade name "The Honey Baked Ham Company" since 1949. Plaintiff Trust has marketed a variety of pork products, poultry and condiments under the name "Honey Baked Ham." In the mid–1960's the Trust, through its predecessors in interest, began licensing entities throughout the country to use the "Honey Baked Ham" name. There are presently 113 "Honey Baked Ham" retail outlets in 24 states. Total sales for products under the "Honey Baked Ham" label are almost $400,000,000.

(2) Plaintiff Original Honey Baked Ham Company of Georgia, Inc. ("Licensee") is the Georgia licensee for the name "Honey Baked Ham." Plaintiff Licensee first opened an outlet in the metropolitan Atlanta area in 1973. It presently operates 9 stores in the metropolitan Atlanta area. Since obtaining its license in 1973, plaintiff Licensee has spent over $3,250,000 in advertising products and had sales of over $100,000,000 under the "Honey Baked Ham" name.

(3) The hams sold by the Trust and the Licensee under the name "Honey Baked Ham" are prepared by first custom trimming the hams, then custom curing and pickling the hams for several days, then cooking the hams in smoke filled ovens for up to thirty hours, and finally spirally slicing and glazing the hams under flame with a special mixture of spices, one of which is honey. Because of the temperatures at which the hams are cooked, the Trust is not permitted to advertise their hams as "baked" under United States Department of Agriculture guidelines.

(4) In 1977, plaintiff Trust filed with the United States Patent and Trademark Office ("USPTO") an application to register the mark "Honey Baked Ham." Both initially and on appeal to the USPTO's Trial and Appeal Board, the Trust's application was denied. The Trust then appealed the USPTO's denial to the United States District Court for the Eastern District of Michigan. The district court found the mark "Honey Baked Ham" to be "merely" descriptive and, having acquired a secondary meaning,

to be subject to trademark protection. *Schmidt v. Quigg,* 609 F.Supp. 227, 231 (E.D.Mich.1985). The district court, therefore, reversed the USPTO denial and directed that the USPTO grant the Trust's application. On February 25, 1986, the USPTO registered "Honey Baked Ham" in its principal register of trademarks. USPTO Reg. No. 1,384,504.

(5) Beginning in late August, 1986, the defendant began selling products from its Snellville, Georgia outlet store under the name "Honeysweet Ham." The defendant also is in the process of opening a second store in the metropolitan Atlanta area under the name "Honeysweet Ham." Defendant's second store is scheduled to open to the public on October 9, 1986.

(6) The hams produced by the defendant under the name "Honeysweet Hams" are first trimmed of excess fat and cured in a compound containing a variety of spices and ingredients, including a considerable amount of honey. After the hams are soaked in a liquid mixture containing pure honey they are cooked in a smoke filled "smokehouse" for in excess of 12 hours. Finally, the hams are spirally sliced and glazed with a compound containing pure honey.

(7) Plaintiffs arranged for a public opinion and marketing research firm to conduct a survey to determine the unaided and aided awareness in the Atlanta area of the "Honey Baked Ham" brand name and to determine whether the name "Honeysweet Ham" is confusingly similar to the name "Honey Baked Ham." The survey results indicate that 53% of the survey participants named "Honey Baked Ham" as one of the brand names of ham that, unaided, came to their mind. This percentage is nearly double the percentage of brand name recall for any other major brand name of pre-cooked sliced hams, e.g., Armour, Swift or Hormel. The survey results also indicate that over 96% of the participants were aware of the brand name "Honey Baked Ham." When shown photographs of defendant's "Honeysweet Ham" outlet store, 29% of the survey participants indicated that they expect-

ed to be able to obtain a "Honey Baked brand ham" at that store.

## DISCUSSION

Plaintiffs have requested a temporary restraining order and a preliminary injunction to enjoin the defendant from advertising, promoting, offering for sale, or selling any spiral sliced or glazed hams or any other similar goods under the name "Honeysweet Ham." In light of the ample opportunity that has been given all parties to argue their side and to submit evidence, the court will rule directly on plaintiffs' motion for a preliminary injunction. *Levas and Levas v. Village of Antioch, Ill.,* 684 F.2d 446, 448 (7th Cir.1982). Plaintiffs' application for a temporary restraining order and expedited discovery, therefore, is denied as moot.

In order to prevail on their motion for a preliminary injunction, the plaintiffs must establish:

(1) substantial likelihood that they will prevail on the merits;

(2) substantial threat that they will suffer irreparable injury if interlocutory injunctive relief is not granted;

(3) threatened injury to them outweighs threatened harm injunction may do to defendant; and

(4) granting injunction will serve the public interest.

*Buchanan v. United States Postal Service,* 508 F.2d 259, 266 (5th Cir.1975).

## LIKELIHOOD OF SUCCESS ON THE MERITS

The issue of greatest concern to this court bearing directly upon plaintiffs' likelihood of success at trial is whether the name "Honey Baked Ham" is generic or "merely" descriptive. Trademarks can be categorized as (1) *generic* or *descriptive,* i.e., the mark describes the product itself; (2) *suggestive,* i.e., the mark describes or suggests a characteristic of the product; and (3) *arbitrary* or *fanciful,* i.e., the mark is in common use, but applied to a product or service unrelated to its meaning, so that the word neither describes nor suggests the product or service, or *coined,* i.e., the

mark is a word devised or invented for the purpose of identifying the product or service. *Jellibeans Inc. v. Skating Club of Georgia, Inc.*, 716 F.2d 833, 841 n. 18 (11th Cir.1983), *citing Tisch Hotels, Inc. v. Americana Inn, Inc.*, 350 F.2d 609, 611 n. 2 (7th Cir.1965).

A generic or "common" descriptive term, which is commonly used as the name or description *of a kind of good*, cannot become a trademark under the present law. A "merely" descriptive term, however, which specifically describes a characteristic or ingredient of a product, can, by acquiring a secondary meaning, become a valid trademark. A suggestive or arbitrary mark does not require a showing of secondary meaning in order to be valid trademark. A secondary meaning exists when, in addition to the words literal meaning, the words in the mark connote to the consumer a product from a *particular* source.

In the instant action, the defendant contends that "Honey Baked Ham" is a generic term and, therefore, not subject to trademark protection. Plaintiffs contend that "Honey Baked Ham" is a "merely" descriptive term which has acquired a secondary meaning and, therefore, is subject to trademark protection.[1] The distinction between generic and descriptive terms is, as one might presume, a very fine line. "In a sense, a generic designation is the ultimate in descriptiveness." J. Thomas McCarthy, *1 Trademarks and Unfair Competition*, § 12.5, p. 413 (1973). Among other factors, the court must look to the common or public usage of the disputed term to determine whether it is primarily associated with a product or a source of a product. *Bayer Co. v. United Drug Co.*, 272 F. 505, 509 (D.C.N.Y.1921). In support of their position, the plaintiffs have submitted the bulk of the evidence submitted to Judge Feikens when he found "Honey Baked Ham" to be a "merely" descriptive term which had acquired secondary meaning.[2]

Plaintiffs' evidence indicates that term has been used exclusively and continuously since 1949 by the Honey Baked Ham Company; that several witnesses believe "Honey Baked Ham" to be only available from a Honey Baked Ham Company retail outlet; that in a survey conducted in Cleveland, Ohio during 1984, 96.3% of the respondents indicated that they had heard of "Honey Baked brand ham" before the survey and 100% of those who indicated such knowledge also indicated that they were aware that a "Honey Baked Ham" could only be purchased in a Honey Baked Ham Company retail outlet. Not one person questioned in the Cleveland survey responded that a "Honey Baked Ham" is available at any other location then a Honey Baked Ham Company store or that it could be prepared at home. Finally, the court notes that "Honey Baked Ham" is hardly "ultimately descriptive" of plaintiffs' product as plaintiffs' hams are not baked in honey. Rather, they are smoked and then glazed with a spice compound which includes honey. The "honey" ingredient of a "Honey Baked Ham" is but one small component of the ham.

The defendant notes in its supplemental brief and oral argument that plaintiff Trust held a patent on a spiral slicer which allowed it, the defendant claims, to monopolize the market on pre-cooked spiral sliced hams. Certainly, defendant's argument would be entitled to strong consideration if the plaintiffs had named their ham

---

1. In light of the fact that plaintiffs' hams are not baked in honey, the name "Honey Baked Ham" is arguably "deceptively misdescriptive." In the absence, as here, of any evidence that the misdescription was planned or designed to deceive the public, "deceptively misdescriptive" marks are placed in the same category as descriptive remarks and, thus, need proof of secondary meaning in order to be protected under federal trademark law. Since both descriptive and "deceptively misdescriptive" marks require proof of secondary meaning, the court need not address at this point this distinction as it may relate to the instant case.

2. While persuasive, the court does not consider itself bound by the finding of "descriptiveness" or "secondary meaning" made in *Schmidt v. Quigg*, 609 F.Supp. 227 (E.D.Mich.1985), or *Schmidt v. Hill Honey Glazed Ham, Inc.*, C83–502–CLH (D.Ariz. March 17, 1983) [Available on WESTLAW, DCT database].

"Spiral Sliced Ham." Plaintiffs, however, had no patent on the pre-cooking of hams or the glazing of hams in a honey compound. Thus, while still relevant to determining the strength of the secondary meaning attached to the "merely" descriptive term "Honey Baked Ham," the court does not find the patent on the spiral slicer sufficient to overcome the extremely strong evidence before the court of brand awareness possessed by the plaintiffs. For purposes of ruling on plaintiffs' motion for a preliminary injunction, the court concludes that the plaintiff has made a strong showing that the term "Honey Baked Ham" is a "merely" descriptive term which has acquired a strong secondary meaning and, therefore, has protection under federal trademark law.

■ Having concluded that "Honey Baked Ham" is a protected trademark, the court must now examine whether the plaintiffs have made a showing of a "likelihood of confusion" on the part of consumers between the terms "Honey Baked Ham" and "Honeysweet Ham." Eleventh Circuit case law has established seven factors to consider in deciding whether there is a likelihood of confusion. The factors include the type of mark involved, the similarity in design or impression of the marks, the similarity of services, the identity of purchasers and similarity of retail outlets, the similarity of advertising campaigns, the defendant's intent, and actual confusion. *Freedom Savings and Loan Association v. Way*, 757 F.2d 1176, 1182 (11th Cir.1985), *citing Safeway Stores, Inc. v. Safeway Discount Drugs*, 675 F.2d 1160, 1164 (11th Cir.1982). No one factor is conclusive, nor are the presence of all factors necessary. Naturally, the best evidence of likelihood of confusion is actual confusion. *Roto-Rooter Corp. v. O'Neal*, 513 F.2d 44, 45–46 (5th Cir.1975).

Initially, the court notes that because "Honey Baked Ham" is a "merely" descriptive term, it is a "weak" mark and therefore less protected than would be a suggestive or arbitrary term. A review of the evidence before the court, in the form of depositions and the Atlanta survey, how-

ever, indicates that there is a substantial amount of actual confusion between "Honey Baked Ham" and "Honeysweet Ham." Twenty-nine percent of the Atlanta survey participants, when shown a photograph of the soon to open Honeysweet Ham store, expressed their belief that they could obtain a "Honey Baked brand ham" at that store. While the defendant has strongly attacked the Atlanta survey, citing a variety of problems concerning its scope and potential accuracy, the court notes that the problems cited by the defendant address the weight to be given the survey and not its admissibility. *Jellibeans*, 716 F.2d at 844–45 and n. 24. The study results are corroborated by the depositions submitted by the plaintiff.

■ Such confusion is not surprising given the aural similarity of the terms "Honey Baked Ham" and "Honeysweet Ham." Both terms have the same sound and cadence. Additionally, the court notes that both plaintiffs and the defendant supply virtually identical products; are located in identical markets and appeal to identical purchasers; are sold out of retail outlets; utilize similar forms of advertisements, e.g., brochures, fliers and newspapers ads; and the circumstantial evidence indicates that, while the defendant took some steps to avoid directly infringing on plaintiffs' mark, the defendant also clearly attempted to obtain a mark as close as possible to plaintiffs' so as to draw on plaintiffs' goodwill in the market place. After balancing the above factors, the court concludes that the plaintiffs have established a substantial likelihood of success at trial on the merits of their trademark infringement and unfair competition claims as "Honey Baked Ham" appears to be a "merely" descriptive term with secondary meaning and which is likely to be confused with "Honeysweet Ham."

### IRREPARABLE HARM

■ Plaintiffs' strong showing of a likelihood of confusion in this case also establishes substantial threat of irreparable harm to the plaintiffs. *E. Remy Martin & Co. v. Shaw-Ross International Imports, Inc.*, 756 F.2d 1525, 1530 and n. 14 (11th

Cir.1985). The possible loss to the plaintiffs of 25–30% of their market in the Atlanta area through confusion with the defendant's product could irreparably damage the plaintiffs and their long-established goodwill. The defendant has not seriously contested the substantial threat of irreparable injury to the plaintiffs.

## BALANCING THE HARM

Permitting the plaintiffs to lose a substantial percentage of their long-established customer base through confusion with the defendant's product is substantially more harmful to the plaintiffs than requiring the defendant to stop using its month old "Honeysweet Ham" name would be to the defendant. Defendant's first store has only used the name "Honeysweet Ham" for a month and therefore has not built a significant or established customer base under that name; the unopened store has yet to create any significant customer base.

## PUBLIC INTEREST

Preventing confusion in the market place and guaranteeing consumers the product they desire is clearly in the public interest. Therefore, the court has no problem finding the granting of an injunction to prevent trademark infringement to be in the public interest.

## CONCLUSION

The plaintiffs having established (1) substantial likelihood of success on the merits, (2) substantial threat of irreparable injury, (3) a greater harm to the plaintiffs absent an injunction than to the defendant with an injunction, and (4) service to the public interest by granting injunctive relief, the court grants plaintiffs' motion for a preliminary injunction and hereby directs, pending further order, that the defendant, its servants, agents and employees, and all other persons in active concert or participation with them, and their successors and assignees, are enjoined and restrained during the pendency of this action from:

(1) using, in the advertisement, promotion, offering for sale or sale of any pre-cooked spiral sliced or glazed ham, other pork products, poultry or condiments, or similar or related goods, the name or mark "Honeysweet Ham" or any other colorable imitation of "Honey Baked Ham";

(2) expressly or impliedly representing itself to customers, potential customers, or the public to be affiliated in any way with plaintiffs in connection with the sale, offering for sale, distribution, advertising or promotion of hams or other food products; and

(3) representing by words or conduct that any product provided, offered for sale, sold, advertised, or rendered by defendant is authorized, sponsored or endorsed by or otherwise connected with plaintiffs.

In furtherance of this order, the defendant shall take prompt affirmative action to the extent possible to withdraw any pending contrary advertisements or telephone listings. This order is effective upon plaintiffs' giving a $50,000 bond for the payment of such costs and damages as may be incurred by the defendant should it be determined that the defendant was wrongfully enjoined. Fed.R.Civ.P. 65(c).