Jonathan LEIS and Sartash, Inc., Plaintiffs,

v.

William DAVIDSON and Michael Leonetti, Defendants.

No. 13 C 1106.

United States District Court, N.D. Illinois, Eastern Division.

April 5, 2013.

John David Fitzpatrick, Steven P. Mandell, Stephen J. Rosenfeld, Mandell Menkes LLC, Chicago, IL, for Plaintiffs.

Thomas M. Lombardo, Gabriel Lewis Mathless, Ginsberg Jacobs LLC, Chicago, IL, for Defendants.

## *ORDER*

JOAN B. GOTTSCHALL, District Judge.

Plaintiffs, Jonathan Leis and Sartash, Inc. (collectively, "Leis") have brought this action against former business partners, Defendants William Davidson and Michael Leonetti (collectively, "Davidson"). Leis's five-count Amended Complaint seeks damages, reasonable attorney's fees and costs, permanent equitable relief, and a preliminary injunction. Now before the court is Davidson's motion to dismiss Count I of the Amended Complaint, which alleges that Davidson violated the Lanham Act, 15 U.S.C. § 1125(a)(1). For the reasons that follow, the court concludes that Leis cannot state a claim under the Lanham Act, and so the motion to dismiss Count I is granted.

Given the time-sensitive nature of this case, its procedural history is slightly unusual and merits explanation. Davidson moved this court to dismiss the original complaint, arguing that Leis failed to state

a federal claim, and that the court should decline to exercise supplemental jurisdiction over the state-law claims. This court partially granted the motion to dismiss, ruling that Leis's securities fraud claim under Securities and Exchange Commission Rule 10b–5 failed to meet the pleading requirements of Federal Rule of Civil Procedure 9(b). Leis re-pleaded the Rule 10b–5 claim, and the parties are now briefing a second motion to dismiss that claim.

Davidson also moved this court to stay the action under the Colorado River doctrine, because Davidson had already filed a suit against Leis in the Circuit Court of Cook County. After Leis filed his Amended Complaint, the court denied the motion to abstain without prejudice because the court was satisfied that the Rule 10b–5 claim (over which this court has exclusive jurisdiction) was sufficiently non-frivolous. The court set a hearing date on the motion for a preliminary injunction.

## I. BACKGROUND [1]

Leis is a professor of microbiology and immunology at the Northwestern University Feinberg School of Medicine ("Northwestern"), where he researches the replication of retroviruses. According to his complaint, his research "culminated in a ground-breaking discovery that could lead to effective drug-based treatment for many virus infections." (Am. Compl. at ¶ 1, ECF No. 24.) Because Leis's research was conducted at Northwestern, Northwestern asserts ownership over the intellectual property and patents created from the research. Without permission from

Northwestern, Leis alleges that he did not have "any right to exploit, commercialize, or otherwise offer for sale" his discovery. (Id. at ¶ 18.)

In September 2010, Leis met Davidson at a neighborhood cocktail party. "Davidson held himself out ... as an executive well-versed in start-up companies with connections to millions of dollars of financing for such ventures." (Id. at ¶ 20.) From September to December 2010, Davidson and Leis had ongoing informal discussions about forming a business venture to commercialize Leis's research. Davidson introduced Leis to Michael Leonetti, who referred to himself as "Mike Smith" and represented that he was a successful pharmaceutical executive. During the fall of 2010, Leis repeatedly asked Davidson to identify the potential investors Davidson said he had contacted, but Davidson never identified anyone prepared to invest in the proposed business.

At the end of 2010, Davidson gave Leis documents he said were "necessary to secure the name 'Viral–Wall, Inc.' with the Illinois Secretary of State." (Id. at ¶ 24.) Leis signed the documents, which were articles of incorporation, "and unwittingly became an incorporator of Viral–Wall, Inc." (Id.) Davidson filed the articles of incorporation on December 29, 2010. Leis alleges that Viral–Wall never issued any shares.[2]

In January 2011, Leis discovered that Davidson was holding himself out as the President and CEO of Viral–Wall. Leis immediately told Davidson that, if they

---

**1.** These facts are from Leis's Amended Complaint, and are taken as true at this stage. The Lanham Act claim was identical in the original and amended complaints, so the parties agreed the court should rule on Davidson's motion to dismiss the original complaint.

**2.** This allegation forms part of the factual basis for Counts I–IV of the Amended Complaint. Count V is based on the opposite factual predicate and pled in the alternative, in case "this Court determines that Dr. Leis and Defendants did have an agreement with regard to ownership of Viral–Wall." (Am. Compl. at 15.)

were going to move forward with a business, they needed a formal agreement. The two discussed the appropriate corporate structure and division of equity. On a telephone call in late January 2011, Leis alleges that "Davidson agreed that if [Davidson] could raise $2 million for the venture within four months, he would be entitled to take an 18% interest in an LLC." (*Id.* at ¶ 28.) Leis's counsel drafted an agreement memorializing those terms, but Davidson stated that he was no longer interested in that arrangement, and the two continued to discuss the terms of a business venture.

In February 2011, Davidson sent Leis a draft budget for the proposed business venture, which included a $150,000 annual salary for Davidson. Leis responded that he was uncomfortable with that salary, given that the venture had no financing and still required at least eight years of research. Leis sent Davidson an email, stating in part, "In light of the fact that we do not have a final LLC agreement yet in place nor a corporate structure in place, I am requesting that you do nothing else on my behalf until we do have a signed working agreement next week." (*Id.* at ¶ 31.) A week later, Leis emailed Davidson that he wished to communicate only through his attorney. That same day, Davidson sent an email to other individuals at Northwestern and a potential investor claiming that Leis had breached his agreement with Davidson and Viral–Wall. Leis's counsel emailed Davidson to request that he refrain from contacting potential investors or identifying himself as affiliated with Leis or Viral–Wall, and assist in dissolving Viral–Wall. Despite these communications, Davidson continued to pursue potential investments in Viral–Wall and continues to represent himself as its CEO. On his LinkedIn profile, Davidson "describes Viral–Wall as a company that is developing and will sell a new class of groundbreaking antiviral drugs[.]" (*Id.* at ¶ 40.)

In June, 2011, Leis formed Sartash, Inc., and in October 2012, Sartash entered into an agreement with Northwestern granting Sartash "an exclusive license to make, have made, use, import, offer for sale and sell any product or service that is covered by or that incorporates or is developed or made using the Anti–Viral Discovery." (*Id.* at ¶ 43.) Leis alleges that Davidson has interfered with Sartash's attempts to obtain funding, and that "[s]everal investors have indicated that they would have invested millions of dollars in Sartash but for Davidson's wrongful claims and threats." (*Id.* at ¶ 46.)

## II. Legal Standard

For purposes of a motion to dismiss, the court takes all facts alleged in the complaint as true and draws all reasonable inferences from those facts in the plaintiff's favor, although conclusory allegations that merely recite the elements of a claim are not entitled to this presumption of truth. *Virnich v. Vorwald,* 664 F.3d 206, 212 (7th Cir.2011). A motion to dismiss should be granted if the plaintiff fails to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The factual allegations in a complaint must "raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555–56, 127 S.Ct. 1955; *see also Swanson v. Citibank, N.A.,* 614 F.3d 400, 404 (7th Cir.2010) ("[P]laintiff must give enough details about the subject-matter of the case to present a story that holds together."). The plaintiff's complaint must offer "enough facts to raise a reasonable expectation that discovery will reveal evidence" that supports the plaintiff's allegations. *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955.

## III. ANALYSIS

■ Count I alleges a violation of section 43(a) of the Lanham Act ("the Act"). The purpose of the Act is to protect consumers from false, misleading, or unfair business practices. *Bretford Mfg. v. Smith Sys., Mfg.*, 419 F.3d 576, 581 (7th Cir.2005). The Act imposes civil liability on anyone "who, on or *in connection with any goods or services,* or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact[.]" 15 U.S.C. § 1125(a)(1) (emphasis added).

■ The basis of Leis' Lanham Act claim is that Davidson engaged in unfair competition by promoting his supposed affiliation with Leis and Viral–Wall and asserting that Viral–Wall has an interest in the intellectual property rights which have been acquired by Sartash. Leis's Amended Complaint claims, "In connection with providing in interstate commerce his goods and services, Davidson made numerous false and/or misleading descriptions and representations of fact to potential investors and others regarding Davidson's affiliation with Dr. Leis and the Anti–Viral Discovery." (Am. Compl. at ¶ 48.) This boilerplate language, of course, is not entitled to the presumption of truth accorded to factual allegations in a complaint. *Iqbal*, 556 U.S. at 664, 129 S.Ct. 1937.

■ The Amended Complaint fails to state a claim under the Act because the statements Davidson made were not "on or in connection with any goods or services," and so fall outside the scope of the Act. To date, neither Viral–Wall nor Sartash has developed any goods or services. Leis has not pointed to any cases, nor can the court find any, where a statement about goods or services not yet in existence was actionable under the Act. In short, without extant goods and services, there can be no consumers to be protected by the Act. Leis argues, without any case law, that his own research is a "service" covered by the Act. Though "service" is not defined in the Act, the case law makes clear that a covered service must be to a third party, not to the corporation itself. *See Murphy v. Provident Mut. Life Ins. Co. of Philadelphia*, 923 F.2d 923, 926 (2nd Cir.1990); *Cottonwood Fin. Ltd. v. Cash Store Fin. Servs., Inc.*, 778 F.Supp.2d 726, 739 (N.D.Tex. 2011). Moreover, an investment in Viral–Wall is not a "good." *Groetzinger v. C.I.R.*, 771 F.2d 269, 276–77 (7th Cir.1985) ("Securities simply are not goods.") Nor does Davidson's effort to sell an interest in Viral–Wall constitute a "service." *Cottonwood*, 778 F.Supp.2d at 739–40. Because Davidson's allegedly false statements were not made in connection with any good or service, the Lanham Act claim is dismissed.

## IV. CONCLUSION

Davidson's motions to dismiss Count I is granted.