**EXPRESS FRANCHISE SERVICES, L.P., Plaintiff,**

v.

**IMPACT OUTSOURCING SOLUTIONS, INC., et al., Defendants.**

**CIVIL ACTION FILE NUMBER 3:16–cv–147–TCB**

United States District Court, N.D. Georgia, Newnan Division.

Signed March 20, 2017

Christopher Prine Bussert, Crystal Covington Genteman, James White Faris, VI, Kilpatrick Townsend & Stockton, LLP–ATL, Atlanta, GA, Cole B. Ramey, John Michael Ellis, Raymond T. Fischer, Kilpatrick Townsend & Stockton, LLP–TX, Dallas, TX, for Plaintiff.

Daniel G. Webber, Jr., Patrick R. Pearce, Jr., Phillip G. Whaley, Ryan Whaley Coldiron Jantzen Peters & Webber PLLC, Oklahoma City, OK, Thomas C. James, III, James Bates Brannan Groover, LLP–M. GA, Macon, GA, William Joseph Sheppard, James, Bates, Brannan, Groover, LLP–ATL, Atlanta, GA, for Defendants.

## ORDER

Timothy C. Batten, Sr. United States District Judge

This case comes before the Court on Plaintiff's motion for a preliminary injunction [20] and Defendants' motion to dismiss [21].

### I. Factual Background [1]

Plaintiff Express Franchise Services, L.P. operates more than seven hundred franchise locations throughout the United States and Canada, through which it provides a wide range of contract staffing, recruiting, and human-resource services. In connection with that business, it and its franchisees use certain registered marks, including "EXPRESS," "EXPRESS EMPLOYMENT PROFESSIONALS," and an "X" designed to resemble a person (collectively, the "Express Marks"), which are

---

**1.** The Court's factual recitation is derived from the allegations in the complaint, which for purposes of Defendants' motion to dismiss are entitled to a presumption of truth. When analyzing Plaintiff's motion for a preliminary injunction, any relevant facts extraneous to the complaint will be addressed where appropriate.

depicted below.[2]

**EXpress EXpress**

*EMPLOYMENT PROFESSIONALS*

Defendants in this case are Impact Outsourcing Solutions, Inc. and eleven limited liability companies named Impact Outsourcing Solutions I–XI (collectively with Impact Outsourcing Solutions, Inc., "IOS"). These companies are alleged to be part of a single staffing, recruiting, and human-resource services business operating in Georgia under the name and servicemark "Impact Outsourcing Solutions." These IOS entities are all owned by Don King.

King also owns Southern Staffing, Inc. ("SSI"), which is an Express franchisee pursuant to a franchise agreement dated November 1998. SSI operates several Express franchises in Georgia that do business under names consisting of a combination of the Express Marks and a geographic designation, such as "Express Employment Professionals—Griffin" and "Express Employment Professionals—McDonough." Pursuant to the franchise agreement between Express and SSI, SSI was granted a limited sublicense to use the Express Marks in connection with its franchises. The agreement prohibits SSI and King from using the Express Marks in connection with any other business or service.

IOS is neither an Express franchise nor otherwise affiliated with or endorsed by Express. However, Express alleges in this lawsuit that IOS has made improper use of the Express Marks in a manner that is likely to confuse the consuming public into

believing that IOS is affiliated with Express. Express's complaint points to five specific instances of such alleged misuse of its marks by IOS: (1) IOS's advertisements on internet job boards; (2) IOS's advertisement of job opportunities through social media sites associated with SSI's Express franchises; (3) IOS's promotion of webinars as being co-sponsored by IOS and SSI's Express franchises; (4) IOS's distribution of training materials and seminar documents claiming that IOS and Express have been working together to create a "career pathing program"; and (5) IOS's promotion of its business at job fair booths alongside SSI's Express franchises. [1] at ¶¶ 21–25; *see also* [1–2] (internet job postings); [1–3] (social media postings); [1–4] (webinar ads); [1–5] (training materials and seminar documents); [1–6] (job fair photos).

Based on these allegations of IOS's improper use of the Express Marks, Express brings claims against IOS for violations of §§ 32 and 43(a) of the Lanham Act, the Georgia Uniform Deceptive Trade Practices Act, and Georgia statutory and common-law protections against unfair competition. These claims are brought only against IOS; neither SSI nor King is a party to this lawsuit, although Express has brought claims against them in a different forum.

Express has moved for a preliminary injunction enjoining IOS from continuing to use the Express Marks or any confusingly similar marks in connection with its

---

**2.** Express is the owner of at least thirteen U.S. servicemark registrations for the Express Marks, all of which have become incontestable pursuant to 15 U.S.C. § 1065.

business or services. Three days after Express filed its motion, IOS moved for dismissal of Express's complaint for failure to state a claim upon which relief can be granted. Both motions are fully briefed and ripe for resolution. Section II of this Order will analyze IOS's motion to dismiss, which must be decided based on the well-pled factual averments in Express's complaint. In Section III, the Court will address whether Express has satisfied the requirements under Federal Rule of Civil Procedure 65 for obtaining a preliminary injunction with respect to any claims that are not subject to dismissal.

## II. IOS's Motion to Dismiss [21]

### A. Legal Standard

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012). A claim is subject to dismissal pursuant to Rule 12(b)(6) if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The Supreme Court has explained this standard as follows:

A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (internal citation omitted). This pleading standard does not require "detailed factual allegations," but it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Chaparro*, 693 F.3d at 1337. Thus, a claim will survive a motion to dismiss only if the factual allegations in the pleading are "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955.

In considering a party's motion to dismiss under Rule 12(b)(6), the allegations in the complaint must be accepted as true and construed in the light most favorable to the plaintiff. *Powell v. Thomas*, 643 F.3d 1300, 1302 (11th Cir. 2011). But the Court need not accept as true "labels and conclusions," "formulaic recitation[s] of the elements of a cause of action," nor legal conclusions couched as factual allegations. *Iqbal*, 129 S.Ct. at 1949–50; *Chaparro*, 693 F.3d at 1337. Thus, evaluation of a motion to dismiss requires two steps: (1) eliminate any allegations in the pleading that are merely legal conclusions, and (2) where there are well-pleaded factual allegations, "assume their veracity and ... determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950.

### B. Lanham Act Claims

#### 1. Elements of Express's Lanham Act Claims and the "Use in Commerce" Requirement

Express brings claims against IOS for violation of §§ 32 and 43(a) of the Lanham Act, 15 U.S.C. § 1114(1)(a) and 1125(a). "Under [§ 32 of] the Lanham Act, a defendant is liable for infringement if, without consent, he uses 'in commerce any reproduction, counterfeit, copy or colorable imitation of a registered mark' which is 'likely to cause confusion, or to cause mistake, or to deceive.'" *Fla. Int'l Univ. Bd. of Trs. v. Fla. Nat'l Univ., Inc.*, 91 F.Supp.3d 1265,

1274 (S.D. Fla. 2015) (quoting 15 U.S.C. § 1114(1)(a)). " 'Section 43(a) of the Lanham Act creates a federal cause of action for unfair competition' in interstate commerce and 'forbids unfair trade practices involving infringement of trademarks ....' " *Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 647 (11th Cir. 2007) (internal punctuation omitted) (quoting *Univ. of Fla. v. KPB, Inc.*, 89 F.3d 773, 775–76 (11th Cir. 1996) (per curiam)).

For present purposes, the elements of these two Lanham Act claims are the same. *Hoop Culture, Inc. v. GAP Inc.*, 648 Fed.Appx. 981, 983 n.1 (11th Cir. 2016). Express's complaint can survive IOS's motion to dismiss only if it contains well pled factual averments alleging that (1) it possesses valid marks; (2) IOS "used [those marks] in commerce in connection with the sale or advertising of goods" or services; and (3) IOS used the marks in a manner likely to confuse consumers. *Id.* at 983; *see also N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1218 (11th Cir. 2008).

The first element is not at issue, as there is no dispute that Express has adequately alleged that it possesses valid marks. The remaining requirements will be addressed below in reference to each instance of alleged use of the Express Marks by IOS. Preliminarily, however, the Court must address an issue relevant to all such alleged uses: whether Express has adequately alleged that IOS used the Express Marks "in commerce."

IOS would have the Court read the "use in commerce" requirement narrowly in a manner that restricts the application of the Lanham Act. *See generally* [21–1] at 13–15; [32] at 11–14. But the Eleventh Circuit has instructed that "[t]he term 'use in commerce' as used in the Lanham Act denotes Congress's authority under the Commerce Clause rather than an intent to limit the Lanham Act's application to profit making activity." *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1194 (11th Cir. 2001) (internal punctuation omitted); *accord Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 677 (9th Cir. 2005) (" 'Use in commerce' is simply a jurisdictional predicate to any law passed by Congress under the Commerce Clause."); *BTG Patent Holdings, LLC v. Bag2Go, GmbH*, 193 F.Supp.3d 1310, 1322–23 (S.D. Fla. 2016) (interpreting "use in commerce" broadly as a jurisdictional requirement for purposes of 15 U.S.C. §§ 1114 and 1125(a), and denying in part a motion to dismiss premised on the plaintiff's failure to allege such a use).

The Court concludes that to the extent Express's complaint alleges that IOS "used" the Express Marks at all—something that is addressed below with respect to each of Express's specific allegations—the alleged uses are all uses "in commerce" for this jurisdictional requirement. Therefore, the remainder of the Court's analysis will focus not on whether Express has alleged a "use in commerce" but rather on whether it has alleged a use in connection with the sale or advertisement of goods or services. *Bosley*, 403 F.3d at 677 (holding that because "use in commerce" is merely jurisdictional language, "the district court should have determined ... whether [the defendant's] use was 'in connection with a sale of goods or services' rather than a 'use in commerce' ").

### 2. IOS's Internet Job Postings

■ The Court now turns to the first of the five instances of IOS's alleged use of the Express Marks. Express avers that IOS has referred to itself in online job

postings as being "'part of a larger family of companies, including: ... Express Employment Professionals, a top 10 franchised staffing firm that has over 600 units worldwide[.]" [1] at ¶ 21 (quoting [1–2] at 2 & 4). IOS included this language in at least two job descriptions posted online: a comptroller position that was posted on IOS's website, *see* [1–2] at 2–3, and a human resources coordinator position that was posted on Indeed.com, *see id.* at 4–5.

IOS argues that its use of the Express Marks in this manner was merely descriptive and thus lies outside the reach of trademark law. *See generally Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 546 (5th Cir. 1998) ("[W]here a nominative use of a mark occurs without any implication of affiliation, sponsorship, or endorsement—i.e., a likelihood of confusion—the use 'lies outside the strictures of trademark law.'"), *abrogated on other grounds by TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 121 S.Ct. 1255, 149 L.Ed.2d 164 (2001), *as recognized in Test Masters Educ. Servs., Inc. v. State Farm Lloyds*, 791 F.3d 561 (5th Cir. 2015). But while IOS's description of Express as a "top 10 franchised staffing firm" might qualify as descriptive, its assertion that IOS and Express are part of the same "family of companies" could be said to imply "affiliation, sponsorship, or endorsement." *Pebble Beach*, 155 F.3d at 546; *see also New Kids on the Block v. News Am. Publ'g, Inc.*, 971 F.2d 302, 307–08 (9th Cir. 1992) (describing nominative use of a mark as a use that "does not attempt to capitalize on consumer confusion" and "does not imply sponsorship or endorsement by the trademark holder"). When Express's averments and the reasonable inferences to be drawn therefrom are viewed in the light most favorable to Express, the Court cannot say as a matter of law that IOS's internet job postings make only a descriptive use of the Express Marks.

Equally unpersuasive is IOS's contention that the internet job postings do not make use of the Express Marks "in connection with the sale ... or advertising of any goods or services." 15 U.S.C. § 1114(1)(a); *Hoop Culture*, 648 Fed. Appx. at 983. IOS interprets this requirement too narrowly. The Lanham Act provisions at issue in this case require that the contested marks be used " 'in connection with' the sale or advertising of any goods or services, *see* 15 U.S.C. § 1114(1)(a), and 'in connection with' any goods or services, *see* 15 U.S.C. § 1125(a)(1)." *Marten Transport, Ltd. v. Plattform Advert., Inc.*, No. 14-2464-JWL, 2015 WL 363995, at *2 (D. Kan. Jan. 27, 2015). Although IOS's internet job postings are not themselves advertisements for the services provided by IOS, IOS does provide services in interstate commerce, and the Court finds that construing the allegations in favor of Express, IOS's hiring of employees is sufficiently connected to IOS's services to satisfy the "in connection with" requirements of §§ 1114(1)(a) and 1125(a)(1). *Cf. Leis v. Davidson*, 955 F.Supp.2d 821, 825 (N.D. Ill. 2013) (dismissing Lanham Act claim where the defendant was alleged to have falsely implied a relationship with the plaintiff and the plaintiff's company, neither of which had developed any goods of services, and noting that "without extant goods and services, there can be no consumers to be protected by the Act").

■ Additionally, Express has adequately alleged that IOS's use of the contested marks in its internet job postings is likely to cause confusion about the affiliation between IOS and Express and Express's sponsorship or endorsement of IOS's services. IOS suggests this is not the

case because Express and IOS do not provide identical services:

> Express provides staffing and recruiting services while Defendants provide human resource services. IOS is not a staffing company. There is nothing in any of the documents attached to Plaintiff's Complaint that states, suggests, or even implies that IOS is a staffing company. IOS is a [professional employer organization ("PEO")]. Express is not licensed to operate as a PEO in Georgia. Thus, there is no possibility of consumer confusion as a matter of law because Express and IOS provide different services to their customers.

■■■ at 17. Initially, insofar as IOS relies on information extraneous to Express's complaint, this argument is not properly raised at the motion-to-dismiss stage. But more importantly, in the very next sentence IOS concedes that it and Express provide "complementary services" to "common customers." For purposes of the instant motion to dismiss, Express has adequately alleged that IOS's use of the Express Marks in its internet job postings is likely to cause consumer confusion.

For all these reasons, the Court will deny IOS's motion to dismiss claims relating to its use of the Express Marks in internet job postings.

### 3. SSI's Social Media Postings

■■■ Express next complains that IOS used the Express Marks without authorization by using SSI's social media accounts to "advertise job opportunities with [IOS]," often referring to IOS as a "sister company" of SSI's Express franchises. [1] at ¶ 22. But the documents attached to Express's complaint [1–3]—which are deemed a part of the complaint and therefore may be considered at the motion to dismiss,

FED. R. CIV. P. 10(c)—belie any assertion that such use of the Express Marks is attributable to IOS.

The postings at issue were made by SSI to its own Twitter and Facebook accounts. The content of the posts refers only to job openings with IOS and do not incorporate, refer to, or use any of the Express Marks. *See* [1–3]. The Express Marks are visible as the name and image associated with the social media accounts, but SSI's franchise agreement permits it to use the Express Marks in connection with its Express franchises, which exist for the purpose of providing "contract staffing" and "recruiting" services for their clients. [1] at ¶ 10. To the extent the posts at issue could be construed as "use" of the Express Marks at all, such use is in no way attributable to IOS. Any issue Express has with its franchisee's use of the Express Marks in connection with the franchisee's social media accounts is best addressed in litigation against the franchisee and its owner Don King. Express has failed to state a claim against IOS under the Lanham Act relating to these social media posts.

### 4. Training Materials and Seminar Documents

■■■ Express alleges that IOS has "distributed training materials and seminar documents that falsely claim that [IOS] has been working with [Express] in order to create a 'career pathing program.'" [1] at ¶ 24; *see also* [1–5]. Documents attached to the complaint do indeed claim that "Express and Impact have been working over the past several months to develop ... [a] career pathing program to grow into a full time position with [IOS]." [1–5] at 4. These documents prominently display the Express Marks alongside IOS's logo and provide contact information for both IOS and Express. *Id.* They further explain

that when an employee transitions from an Express employee to an IOS employee, his or her "supervisor, worksite location, coworkers, and timesheet procedures will not change" and IOS will honor any PTO days earned by the employee while employed by Express. [1–5] at 3, 5.

For the reasons discussed above, the Court concludes that these averments sufficiently allege that IOS used the Express Marks, that such use was both in commerce and in connection with the sale or advertisement of goods or services, and that such use is likely to cause consumer confusion. Again, these documents have the effect of suggesting the existence of a formal relationship between IOS and Express, and therefore Express plausibly alleges that IOS improperly used the Express Marks in an attempt to capitalize on Express's reputation and goodwill.

### 5. Webinars and Job Fair Booths

 Finally, Express alleges that IOS has made improper use of the Express Marks by displaying them alongside IOS's marks when promoting webinars and at job fair booths. See [1] at ¶¶ 23, 25; [1–4]; [1–6]. IOS argues that SSI authorized these uses in conjunction with events that SSI and IOS were co-sponsoring or otherwise jointly participating in. However, the Court cannot make such a finding at the motion-to-dismiss stage, when the well-pled averments in Express's complaint are entitled to a presumption of truth and all reasonable inferences are to be drawn in Express's favor. See generally [1] at ¶ 19 (alleging that the twelve Defendants "are not now, and have never been, ... authorized to use Plaintiff's Express Marks").

At the motion-to-dismiss stage, the Court declines to hold that the use of the Express Marks on the referenced webinar materials and at job fair booths is not attributable to IOS as a matter of law. For the same reasons discussed above, the factual content of Express's complaint adequately states a claim against IOS based on this conduct.

### C. State–Law Claims

There is no dispute that Express's state-law claims are analogous to and governed by the same legal standards as its Lanham Act claims. See [21–1] at 22. Those state-law claims will therefore likewise be dismissed only insofar as they are premised on the social media postings referenced in paragraph 22 of and attached as Exhibit C to Express's complaint.

### D. Conclusion

IOS's motion to dismiss will be granted in part and denied in part for the reasons just discussed. The motion will be granted with respect to any claims—under federal or state law—based on the allegations in paragraph 22 of and Exhibit C to Express's complaint regarding SSI's social media postings. It will be denied in all other respects, as the remainder of Express's averments adequately state a "claim to relief that is plausible on its face." Twombly, 550 U.S. at 547, 127 S.Ct. 1955.

### III. Express's Motion for a Preliminary Injunction [20]

Having concluded that Express has stated a claim against IOS, the Court now turns to Express's request for preliminary injunctive relief.

### A. Legal Standard

 A district court may grant a preliminary injunction only if the movant

shows (1) a substantial likelihood that it will ultimately prevail on the merits of the case; (2) that the movant will suffer irreparable injury unless the injunction issues; (3) that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) that if issued, the injunction would not be adverse to the public interest. *Osmose, Inc. v. Viance, LLC*, 612 F.3d 1298, 1307 (11th Cir. 2010). In conducting this analysis, the Court is not limited to the four corners of the complaint but "may rely on affidavits and hearsay materials which would not be admissible evidence for a permanent injunction, if the evidence is appropriate given the character and objectives of the injunctive proceeding." *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995).

■ A preliminary injunction "is a drastic remedy not to be granted unless the movant clearly establishes the burden of persuasion as to all four elements." *Davidoff & CIE, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1300 (11th Cir. 2001) (internal punctuation omitted). But the Eleventh Circuit has noted that "trademark actions 'are common venues for the issuance of preliminary injunctions.'" *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1310 (11th Cir. 1998) (quoting *Foxworthy v. Custom Tees, Inc.*, 879 F.Supp. 1200, 1219 (N.D. Ga. 1995).

## B. Likelihood of Success on the Merits of Express's Lanham Act Claims

As noted above, Express can prevail on its Lanham Act claims only by demonstrating that (1) it possesses valid marks; (2) IOS has used those marks "in commerce in connection with the sale or advertising of goods" or services; and (3) IOS used the marks in a manner likely to confuse consumers. *Hoop Culture*, 648 Fed.Appx. at 983. Here, the first element—Express's rights in the marks at issue—is undisputed. The Court has already determined that to the extent IOS used the Express Marks at all, such use occurred both in commerce and in connection with the services provided by IOS. Thus, Express's likelihood of prevailing turns on its ability to show that IOS is using the marks at all and that any such use creates a likelihood of confusion for consumers.

### 1. Use by IOS of the Marks

The Court concluded above that Express adequately alleged that IOS made use of its marks, but that is a distinct inquiry from whether Express is likely to prove that assertion. *See generally Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (noting that the plausibility standard governing a Rule 12(b)(6) motion "is not akin to a 'probability requirement'"); *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955 (noting that a well-pled complaint can survive a motion to dismiss "even if it appears that a recovery is very remote and unlikely") (internal punctuation omitted).

The Court has already considered and rejected most of the arguments advanced by IOS relating to its alleged "use" of the Express Marks. However, for purposes of IOS's motion to dismiss, Express's averment that IOS lacked authorization to use the marks was entitled to a presumption of truth. For purposes of Express's motion for a preliminary injunction, by contrast, the Court can consider the extraneous evidence submitted by IOS—principally in the form of the declarations of Don King [24–1 & 42]—on this issue. And in fact, for the limited purpose of resolving the motion for a preliminary injunction, Express "does not contest the existence of the im-

plied license/sublicense arrangement" that IOS asserts existed. But as Express argues, this argument is ultimately unhelpful to IOS's position.

▮ Even where a defendant possesses a license to use the marks of a licensor, such license "is generally terminable at the will of the licensor." *Conagra, Inc. v. Singleton*, 743 F.2d 1508, 1516 (11th Cir. 1984) (citing, among other cases, *PGA v. Bankers' Life & Cas. Co.*, 514 F.2d 665, 670 (5th Cir. 1975) ("[O]nce the contract ends, a licensee's right to the mark ends, and any subsequent use constitutes infringement.")). By at least November 2015, Express had notified SSI and King that it viewed the joint use of the Express Marks alongside IOS's logo as a violation of the franchise agreement and thus an unauthorized use of the Express Marks. IOS acknowledged this on November 30, 2015, when its counsel wrote to counsel for Express and stated, among other things, that any use by IOS of the Express Marks was inadvertent, had been "cured and eliminated," and "will not be done in the future." [20–4] at 4. Yet IOS continued to make use of the Express Marks, including in the internet job postings discussed above that were available online as late as August 2016. *See* [1–2] at 4; [20–2] at ¶¶ 19–20.[3]

Even accepting IOS's argument that it was, for some period of time, authorized to use the Express Marks, such authorization expired no later than November 2015 and does not provide it with a defense against any subsequent uses of the mark. The Court is thus unpersuaded by IOS's argument that Express is unlikely to be able to show that IOS made "use" of the Express

Marks. The sole remaining issue is whether such use is likely to cause confusion among consumers.

### 2. Likelihood of Confusion

▮ Courts in this circuit look to the following non-exclusive list of factors when determining whether a defendant's use of disputed marks is likely to cause consumer confusion:

(1) the strength of the plaintiff's mark; (2) the similarity between the plaintiff's mark and the allegedly infringing mark; (3) the similarity between the products and services offered by the plaintiff and defendant; (4) the similarity of the sales methods, i.e., retail outlets or customers; (5) the similarity of advertising methods; (6) the defendant's intent, e.g., does the defendant hope to gain competitive advantage by associating his product with plaintiff's established mark; and (7) the most persuasive factor on likely confusion is proof of actual confusion.

*Conagra, Inc. v. Singleton*, 743 F.2d 1508, 1512 (11th Cir. 1984).

### a. Strength of the Express Marks

▮ The first factor a court should look to is the strength, or distinctiveness, of the plaintiff's mark. *Safeway Stores, Inc. v. Safeway Discount Drugs, Inc.*, 675 F.2d 1160, 1164 (11th Cir. 1982). There are four recognized categories of marks:

Generic marks are the weakest and not entitled to protection—they refer to a class of which an individual service is a member (e.g., "liquor store" used in connection with the sale of liquor). Descriptive marks describe a characteristic or

---

**3.** Because the Court concluded that Express failed to state a claim against IOS based on the social media postings, the Court has not

considered that conduct with respect to Express's motion for a preliminary injunction.

quality of an article or service (e.g., "vision center" denoting a place where glasses are sold). Suggestive terms suggest characteristics of the goods and services and require an effort of the imagination by the consumer in order to be understood as descriptive. For instance, "penguin" would be suggestive of refrigerators. An arbitrary mark is a word or phrase that bears no relationship to the product (e.g., "Sun Bank" is arbitrary when applied to banking services). Arbitrary marks are the strongest of the four categories.

*Frehling Enters., Inc. v. Int'l Select Grp., Inc.*, 192 F.3d 1330, 1335–36 (11th Cir. 1999) (internal citations and punctuation omitted). The strength and validity of a mark is "determined by viewing the trademark as a whole," including any generic, descriptive, or disclaimed portions. *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 106 F.3d 355, 362–63 (11th Cir. 1997); *accord Country Floors, Inc. v. P'ship Composed of Gepner & Ford*, 930 F.2d 1056, 1065 (3d Cir. 1991) ("The descriptive portions of a mark can be disclaimed, although the entire composite mark, including the descriptive terms, is considered for purposes of infringement.").

■ "Also important in gauging the strength of a mark is the degree to which third parties make use of the mark." *Frehling Enters.*, 192 F.3d at 1336. "Where there is a lack of third-party use, the mark's strength is enhanced, as it is more distinctive, and therefore more easily recognized by consumers." *Id.* (further noting that "case law is clear that such lack of third-party use should be considered in assessing the strength of a mark").

■ Express argues that its marks are strong because they are covered by multiple incontestable registrations, they are conceptually suggestive and thus inherently distinctive indicators of the services provided under them, and they have been consistently used in commerce for an extended period of time in connection with Express's business. IOS does not dispute that the Express Marks "are relatively strong." [24] at 16. The Court agrees that the Express Marks, when viewed as a whole, are entitled to enhanced protection as at least suggestive marks.

### b. Similarity Between the Parties' Marks

■ "[T]he closer the marks are, the more likely reasonable consumers will mistake the source of the product that each mark represents." *Frehling Enters.*, 192 F.3d at 1337. This is not a case where the plaintiff alleges that the defendant has adopted a mark of its own that is confusingly similar to the plaintiff's marks. Rather, this lawsuit concerns IOS's use of Express's actual marks. Thus, the marks at issue are identical, and this second factor weighs in favor of finding a likelihood of confusion.

### c. Similarity Between the Parties' Services

■ The third factor relevant to the likelihood-of-confusion analysis "requires a determination as to whether the products are the kind that the public attributes to a single source, not whether or not the purchasing public can readily distinguish between the products of the respective parties." *Frehling Enters.*, 192 F.3d at 1338. In other words, the operative inquiry is "whether the goods are so related in the minds of consumers that they get the sense that a single producer is likely to put out both goods." *ITT Corp. v. Xylem Grp.*,

*LLC*, 963 F.Supp.2d 1309, 1321 (N.D. Ga. 2013).

■ Here, as IOS explains in some detail, the services provided by the parties are not identical. IOS is an "employee leasing company" and a PEO that provides human resource services to its clients, while Express is a temporary staffing firm that provides predominantly staffing and recruiting services to its clients. Express is not licensed to operate as a PEO in Georgia, and IOS is not a staffing agency. However, as even IOS concedes, the parties provide "complementary" services to "common customers." [21–1] at 17; [24] at 22 (IOS describing the parties' services as "unique (but complementary)"). In sum, the parties provide similar—albeit not identical—services to the same clients, and the Court is convinced that consumers could easily "get the sense that a single producer is likely to" render both sets of services. *ITT Corp.*, 963 F.Supp.2d at 1321.[4] This factor therefore also weighs in favor of a likelihood of confusion.

### d. Similarity of the Parties' Sales Methods

■ "This factor takes into consideration where, how, and to whom the parties' products are sold. Direct competition between the parties is not required for this factor to weigh in favor of a likelihood of confusion, though evidence that the products are sold in the same stores is certainly strong." *Frehling Enters.*, 192 F.3d at 1339. Rather, to support a likelihood of

confusion, there should be "some overlap" between the parties' respective retail outlets and customer bases. *Id.*

■ ■ IOS concedes that there is "some overlap" between the parties' customers, but it argues that such overlap "is mitigated by the fact the two companies provide different services to those common customers." [24] at 22. As just discussed, the Court disagrees. The parties' services are substantially similar, and they are provided to substantially similar if not identical sets of consumers. The Court therefore finds that the fourth factor weighs in favor of finding a likelihood of confusion.

### e. Similarity of the Parties' Advertising Methods and Media

■ In comparing the similarity of the parties' advertising methods and media, "[i]dentity of periodicals is not required; the standard is whether there is likely to be significant enough overlap in the readership of the publications in which the parties advertise that a possibility of confusion could result." *Frehling Enters.*, 192 F.3d at 1340.

■ The parties have not provided much evidence regarding their respective advertising methods and media, although it is clear that there is significant overlap at least with respect to promotional materials and sponsorships, which IOS contends are not "advertisements" for services. This factor therefore weighs in favor

---

4. The Court notes that this is not a case where the defendant produced counterfeit goods under the plaintiff's protected mark. IOS's use of the Express Marks, in many instances at least, was simply in a manner that suggested the existence of a relationship between the two parties. Thus, the fact that each party

provides some unique services does not defeat a finding that the relevant consuming public could be led to believe that the two companies were nevertheless affiliated, thereby allowing IOS to capitalize or attempt to capitalize on Express's reputation, goodwill, and business associated with the Express Marks.

of finding a likelihood of confusion, but only slightly so.

### f. IOS's Intent

 "If it can be shown that a defendant adopted a plaintiff's mark with the intention of deriving a benefit from the plaintiff's business reputation, this fact alone may be enough to justify the inference that there is confusing similarity." *Frehling Enters.*, 192 F.3d at 1340. Improper intent can be manifested through either "conscious intent to capitalize on [the plaintiff's] business reputation" or "intentional blindness" by the defendant in adopting the allegedly infringing marks. *Id.* However, bad faith on the part of the defendant is not a prerequisite to a finding of likely confusion. *See, e.g., Volkswagenwerk Aktiengesellschaft v. Rickard*, 492 F.2d 474, 478 (5th Cir. 1974) ("[I]ntent is not a necessary element of the tort of unfair competition"); *Freeway Ford, Inc. v. Freeway Motors, Inc.*, 512 F.Supp.2d 1353, 1364 (M.D. Ga. 2007) (granting motion for preliminary injunction on Lanham Act claims despite concluding that this factor was "neutral in the weighing process" because there was a lack of evidence before the court).

 The evidence before the Court does not convince the Court that IOS could be said to have acted in bad faith prior to November 2015, though neither does the evidence preclude such a finding. However, IOS represented to Express on November 30, 2015 that its use of the Express Marks had ceased, when in reality it continued to use the marks until at least August 2016. From this one can infer a continuing intent by IOS to "deriv[e] a benefit from [Express's] business reputation." *Frehling Enters.*, 192 F.3d at 1340. Nevertheless, the facts of this case, at least based on the evidence presently before the Court, are not as egregious as others, and therefore this factor too weighs only slightly in favor of finding a likelihood of confusion.

### g. Proof of Actual Confusion

 "It is undisputed that evidence of actual confusion is the best evidence of a likelihood of confusion. However, such evidence is not a prerequisite, and thus it is up to the individual courts to assess this factor in light of the particular facts of each case." *Frehling Enters.*, 192 F.3d at 1340 (internal citation omitted). Here, neither party points to any instances of actual confusion, and thus this factor is neutral and does not affect the Court's analysis.

### h. Summary of Likelihood of Confusion

Of the seven factors just discussed, all but one weigh in favor of finding a likelihood of confusion, and none mitigates against such a finding. The Court therefore concludes that Express is likely to prevail on the likelihood-of-confusion prong of its claims.

### C. Irreparable Injury

 The Court's focus now shifts to the second factor relevant to the issuance of a preliminary injunction, irreparable harm. In the Eleventh Circuit, "a sufficiently strong showing of likelihood of confusion caused by trademark infringement may by itself constitute a showing of a substantial threat of irreparable harm." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1310 (11th Cir. 1998) (internal punctuation omitted); *Foxworthy v. Custom Tees, Inc.*, 879 F.Supp. 1200, 1219 (N.D. Ga. 1995) ("When a plaintiff makes a *prima facie* showing of trademark in-

fringement, irreparable harm is ordinarily presumed."). The parties dispute to what extent this presumption continues to apply, following the decision in *eBay v. MercExchange*, 547 U.S. 388, 394, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006), in which the Supreme Court questioned—but did not decide—the validity of this presumption in intellectual property cases. The Eleventh Circuit has held that "[i]n light of the Supreme Court's holding in *eBay*, a presumption of irreparable harm cannot survive." *Commodores Entm't Corp. v. McClary*, 648 Fed.Appx. 771, 777 (11th Cir. 2016). But in this case, a likelihood of irreparable harm exists independent of any such presumption.

■ Irreparable harm has previously been found to exist based on a substantial threat of customer confusion and the resulting harm to the plaintiff's reputation and goodwill. *See, e.g., FerrellGas Partners, L.P. v. Barrow*, 143 Fed.Appx. 180, 190 (11th Cir. 2005); *Sound Surgical Techs., LLC v. Leonard A. Rubinstein, M.D., P.A.*, 734 F.Supp.2d 1262, 1278 (M.D. Fla. 2010). Even in the absence of a showing that IOS's use of the Express Marks is causing Express to lose business, Express is suffering irreparable harm in the form of loss of control of its reputation and goodwill.

The Court also concludes that any delay by Express in enforcing its rights to the Express Marks does not defeat a finding of irreparable injury under the facts of this case. *See generally Ga. Television Co. v. TV News Clips of Atlanta, Inc.*, 718 F.Supp. 939, 949 (N.D. Ga. 1989) (finding irreparable harm despite two-year delay by the plaintiff, noting that there was no evidence that such delay had prejudiced the defendant); *BellSouth Advert. & Publ'g Corp. v. Real Color Pages, Inc.*, 792 F.Supp. 775, 785 (M.D. Fla. 1991) ("The Court finds that Plaintiff's delay of seven to eight months is not an unreasonable amount of delay, and does not necessitate the preclusion of a finding of irreparable injury.").

Thus, Express has carried its burden of demonstrating that it will suffer irreparable harm in the absence of an injunction.

### D. Remaining Preliminary Injunction Factors

■ Finally, the Court readily concludes that the final two factors—balancing of equities and the public interest—likewise support granting Express's motion. IOS stands to lose nothing if it is enjoined from further use of the Express Marks, and as is often the case in cases involving Lanham Act violations, the public interest weighs in favor of enforcing Express's intellectual property rights and preventing consumer confusion. *See, e.g., Foxworthy*, 879 F.Supp. at 1219 (noting that the public interest is served by "enforcing the exclusive rights of authors, [which] promotes the 'progress of science and the useful arts'" in accordance with Article I, § 8 of the United States Constitution); *Schmidt v. Honeysweet Hams, Inc.*, 656 F.Supp. 92, 97 (N.D. Ga. 1986) ("Preventing confusion in the market place and guaranteeing consumers the product they desire is clearly in the public interest.").

### E. Preliminary Injunction

Express has satisfied the four prerequisites to the issuance of a preliminary injunction. Accordingly, each Defendant is hereby preliminarily enjoined from:

(1) using any of the Express Marks—in word or design form—in connection with

Defendants' business or services[5] in a manner that suggests the existence of any affiliation, endorsement, sponsorship, or other relationship between Express and Defendants;[6]

(2) using any other trademark, servicemark, name, logo, or source designation of any kind that is a copy, reproduction, colorable imitation, or simulation of or otherwise confusingly similar to the Express Marks in connection with Defendants' business or services in a manner that suggests the existence of any affiliation, endorsement, sponsorship, or other relationship between Express and Defendants; and

(3) using any other trademark, servicemark, name, logo, or source designation of any kind that is likely to cause confusion, mistake, deception, or public misunderstanding that Defendants' business(es) and services are the business(es) or services of Express or otherwise affiliated with or endorsed or sponsored by Express.

5. The phrase "in connection with Defendants' business or services" encompasses, without limitation, Defendants' online job postings, promotional or training materials, client communications, sponsorship materials, and presence at job fairs or other events.

6. As discussed above, the Court has rejected IOS's arguments that its prior uses of the

## IV. Conclusion

For the foregoing reasons, Defendants' motion to dismiss [21] is granted in part and denied in part: it is granted as to any claims relating to the social media postings referenced in paragraph 22 of and Exhibit C to the complaint, but it is denied in all other respects. Plaintiff's motion for a preliminary injunction [20] is granted as set forth in Section III(E) above.

IT IS SO ORDERED this 20th day of March, 2017.

Express Marks fell outside the scope of the trademark laws. However, nothing in this Order would prevent Defendants from actually making such use of the Express Marks. The qualifying language about the manner of Defendants' use of the Express Marks is intended to draw that distinction.